**Andre R. THOMAS, Appellant**

v.

**Warden Thomas L. CARROLL; Attorney General of the State of Delaware.**

No. 06–2282.

United States Court of Appeals, Third Circuit.

Argued March 5, 2009.

Filed: Sept. 22, 2009.

Peter A. Levin, (Argued), Philadelphia, PA, for Appellant.

Loren C. Meyers, Gregory E. Smith, Paul R. Wallace, (Argued), Department of Justice, Wilmington, DE, for Appellee.

Before: SLOVITER, HARDIMAN, Circuit Judges, and POLLAK *, District Judge.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

This appeal presents a factual scenario unique in our experience and a legal question for which we have found no precise precedent.

While Appellant Andre R. Thomas was serving a thirty-five year sentence in a Delaware penal institution, he punched a corrections officer and was subsequently indicted under Delaware law for assault. Prior to trial, Thomas voluntarily and knowingly waived his right to counsel and was permitted to proceed *pro se.* However, after the Delaware trial judge (Superior Court) declined to order the production of all the witnesses and documents that Thomas requested, Thomas refused to participate in the trial. The case proceeded to jury selection and then trial without anyone representing the defense. On several occasions, the trial judge provided Thomas with the opportunity to return to, and participate in, the proceedings, but he declined to do so. Ultimately, he was convicted by a jury, sentenced to eight years additional imprisonment, and on direct appeal, the Delaware Supreme Court affirmed.

* Hon. Louis H. Pollak, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

According to Thomas, his Sixth Amendment rights were violated because the Superior Court conducted the trial without anyone present for the defense. If we were writing on a blank slate, we might agree with Thomas that a trial under those circumstances is inconsistent with the fair trial requirement of the Sixth Amendment. However, this case comes to us on Thomas' petition for a writ of habeas corpus and our inquiry is limited under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d). Here, the Delaware courts' conclusion that Thomas' Sixth Amendment rights were not violated was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Therefore, we will affirm the District Court's denial of his petition.

## I.

### Background

A. The Crime and State Court Proceedings

In 2000, Thomas was convicted of reckless endangerment and related offenses in Delaware state court and sentenced to thirty-five years imprisonment. Pursuant to that conviction and sentence, Thomas was held at the Delaware Correctional Center ("DCC") in New Castle County, Delaware. On July 25, 2002, as Thomas and approximately forty other inmates were exiting the DCC's dining hall, Thomas struck a correctional officer, Michael Moran, on the back of his head. When Moran turned around to determine who had struck him, Thomas hit Moran in the side of the head two or three more times with a closed fist.

Thomas was subsequently indicted by a grand jury in Delaware state court with attempted assault in a detention facility with intent to cause serious physical injury in violation of Del.Code Ann. tit. 11, § 1254(b).[1] An assistant public defender was appointed to represent Thomas, but after Thomas twice refused his assistance and stated that he wished to represent himself, the public defender entered a motion to withdraw as counsel. The Delaware Superior Court granted that motion to withdraw and appointed new counsel. At that time, the Superior Court also denied Thomas' motion that his new counsel serve only as standby counsel.

On December 9, 2002, the Superior Court held a final pretrial hearing. During that proceeding, Thomas expressed his desire to represent himself. The Superior Court informed Thomas of the risks of self-representation, including that Thomas faced a minimum sentence of eight years imprisonment as a habitual offender if convicted and a maximum of life imprisonment. The Superior Court also reminded Thomas that he proceeded *pro se* in his previous criminal trial and was convicted and sentenced to thirty-five years imprisonment.

Thomas subsequently made a formal motion to proceed *pro se*. Although the State opposed Thomas' motion, the Superior Court granted it on December 23, 2002. We note that Thomas does not allege that his waiver of his right to counsel was deficient in any way.

On January 20, 2003, Thomas sent a letter to the Court requesting standby counsel and information regarding the means for subpoenaing witnesses and documents. This letter was docketed as a request for appointment of standby counsel.

---

1. At trial, the State proceeded under the theory that Thomas was guilty of the lesser-included offense of assault at a detention facility, in violation of Del.Code. Ann. tit. 11, § 1254(a).

On April 8, 2003, the case proceeded to trial. Prior to jury selection, the Superior Court noted that Thomas had requested standby counsel and asked whether he recalled that motion. Thomas stated that he did not recall the motion, and upon further questioning by the Court, he stated that he was prepared to proceed *pro se.*

Thomas then moved for the production of thirteen inmates and nine correctional personnel as witnesses as well as certain medical and personnel records.[2] Thomas had taken no action to secure the attendance of these witnesses or production of these materials prior to the trial date. During a lengthy colloquy, the Court explained that it was not obligated to assist him in obtaining the attendance of witnesses or production of documents. The Court also questioned Thomas regarding the proposed testimony of the thirteen inmates, and Thomas stated that all of the requested inmates were present during the alleged assault and, presumably, would testify that he acted in self-defense. The Court then stated that it would arrange to have two or three inmates brought to the trial to testify on Thomas' behalf, but that it would not order production of all thirteen inmates because their testimony would be cumulative. The Court asked Thomas to select three inmate witnesses who would be produced the next day but Thomas replied that this proposal was unacceptable to him and that "you can have these guys take me back down there [to the DCC] and please tell them don't bring me back up here [to the courthouse]. And what you can do is go ahead and have your trial, I'm not participating in that." App. at 11.

After further discussion, the Court asked Thomas if he still wanted to represent himself. Thomas replied: "Certainly." App. at 12. Shortly thereafter, Thomas asked whether the Court could "tell them don't [sic] bring me back up here." App. at 12. The Court stated that it could do so, and Thomas replied: "Okay. That's what I [would] appreciate [that] you do. And just tell them to mail me the verdict." App. at 12.

This exchange did not end the colloquy between Thomas and the Superior Court, and the Court continued to try to reach an accommodation with Thomas. As to the nine correctional personnel, the Court stated that it would order the attendance of a commissary officer who Thomas alleged was present at the incident. However, because Thomas did not even allege that the other personnel had personal knowledge regarding the assault, the Court refused to order their attendance. The Court also ruled that it would not order certain medical personnel to attend because Thomas offered their testimony only to establish that he was injured during the alleged assault and such injuries could be established from his . medical records (which it ordered the State to produce).

At the end of the colloquy, after the Superior Court again repeated its proposed resolution of Thomas' demands regarding production of witnesses and documents, Thomas stated that he was "not going to be a part of that." App. at 19. The Court then asked Thomas whether he would participate in jury selection, and he stated that "I'm not going to participate in having my basic rights taken away from me." App. at 19. The Court concluded:

---

2. Thomas also alleged during his colloquy with the Superior Court that he had not received any discovery materials prior to trial, including the incident reports filed by the personnel at DCC. The State provided Thomas with a copy of all its discovery materials during that hearing.

... [B]ased on your comments, I'm taking that you don't want to participate in [jury selection] if I'm not going to do the other [things] that you're asking for. So we'll pick a jury. And when we're done picking the jury—and I apologize to you now, but I'm going to have to bring you up periodically and say, Mr. Thomas ... is it still your decision not to participate....

App. at 19. Thomas was then escorted out of the courtroom and taken to a holding cell in the courthouse. Again, we note that Thomas concedes that he knowingly and voluntarily waived his right to be present.

The jury was then selected outside of Thomas' presence. The judge informed the potential jurors of Thomas' decision not to participate, instructed them that they should draw no adverse inferences from that decision, and excused any juror who indicated that they would not be able to follow that instruction. Several jurors accepted the invitation, and left. After jury selection, the Court requested that Thomas be brought back into the courtroom (outside the presence of the jury), but Thomas resisted and the Court declined to use force to secure his presence.

After the prosecution gave its opening statement, the Court (outside the presence of the jury) again requested that Thomas be brought into the courtroom to determine whether he still desired not to participate in his trial. Thomas complied with the request to enter the courtroom, but he continued to refuse to participate. Thomas was again escorted out of the courtroom and the trial was conducted without him or anyone else present for the defense. The jury found Thomas guilty of assault in a detention facility. After the jury was excused, Thomas was brought back into the courtroom and informed of the verdict.

The Superior Court subsequently held a sentencing hearing. Thomas was present for, and participated in, that proceeding and again acted *pro se*. The Superior Court determined that Thomas qualified as a habitual offender under Delaware law and sentenced Thomas to the mandatory minimum sentence of eight years imprisonment. *See* Del.Code Ann. tit. 11, § 4214(a).

## B. Direct Appeal

Thomas, again acting *pro se*, then filed a direct appeal to the Delaware Supreme Court, which affirmed Thomas' conviction and sentence. As relevant here, Thomas contended that the Superior Court violated his rights under state law and the Sixth Amendment by its failure to appoint counsel after Thomas was removed from the courtroom because no one was present for the defense. The Delaware Supreme Court concluded that the Superior Court did not err by declining to appoint counsel or by proceeding with the trial in Thomas' absence.

As to the decision not to appoint counsel, the Delaware Supreme Court noted that the Superior Court had raised the issue of Thomas' prior motion for standby counsel, but that Thomas stated that he did not recall the motion and was prepared to proceed *pro se*. Thus, "[i]t was reasonable under the circumstances for the judge to assume that Thomas did not want standby counsel. Given that the facts of Thomas' case were not complex, the judge was within his discretion not to pursue the issue further." App. at 101. In support, the Delaware Supreme Court cited two of its own precedents regarding waiver of the right to counsel, both of which in turn relied on United States Supreme Court (and other federal) precedents construing the Sixth Amendment. App. at 101 (citing *Bass v. State*, 760 A.2d 162 (Del.2000) (ta-

ble); *Briscoe v. State*, 606 A.2d 103 (Del. 1992)).

Further, the Court concluded that "Thomas voluntarily decided not to participate in his trial and, under those circumstances, the Superior Court judge had no choice but to proceed in Thomas' absence." App. at 102. The Delaware Supreme Court relied exclusively on state law regarding the right of a criminal defendant (who is initially present at trial) to voluntarily waive his right to be present at trial. We note that this state authority is consistent with the precedent of the United States Supreme Court. *See Illinois v. Allen*, 397 U.S. 337, 342–43, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) ("No doubt the privilege (of personally confronting witnesses) may be lost by consent ....") (quotation omitted); *see also* Fed. R.Crim. Pro. 43(c) (stating that defendant may waive right to be present at trial).

### C. Federal Habeas Proceedings

Thomas thereafter filed a *pro se* petition for federal habeas relief under 28 U.S.C. § 2254, alleging violations of his Sixth Amendment and due process rights. The District Court rejected all of Thomas' claims. However, it also issued a certificate of appealability "to determine whether [Thomas'] right to a fair trial was violated when the Superior Court proceeded with his trial *in absentia* without appointing counsel to represent him." App. at 132–33. Because that is the only issue properly before us, we limit our discussion of the District Court's opinion accordingly.

First, the District Court held that, although the Delaware Supreme Court rejected Thomas' right to counsel claim on the basis of state law, in doing so the Delaware Supreme Court also adjudicated Thomas' constitutional claims on the merits for purposes of federal habeas review because the Delaware Supreme Court cited state cases applying United States Supreme Court precedent concerning the right to counsel. Thus, AEDPA's deferential standard of review applied to Thomas' Sixth Amendment claims.

On the merits, the District Court denied habeas relief because the Superior Court's decision to conduct the trial *in absentia* without appointing standby counsel was not contrary to, or an unreasonable application of, clearly established federal law. The District Court noted that the "Supreme Court opinions dealing with the appointment of counsel or stand-by counsel after a defendant voluntarily and knowingly waives his right to counsel focus on whether the trial court violated the defendant's right to self-representation by appointing counsel or stand-by counsel." App. at 116. It noted that Thomas "argues the converse here, that the Superior Court violated his right to counsel by failing to appoint stand-by counsel." App. at 116. The Court concluded that Thomas' "refusal to participate in his trial was his way of controlling the case he either did, or did not, present to the jury and court." App. at 119. Further, the District Court noted that the Superior Court questioned Thomas regarding whether he continued to wish to proceed *pro se* after he expressed his desire not to participate in the trial, and Thomas answered affirmatively. Accordingly, "[h]aving assumed control over his defense ... [Thomas] cannot now challenge the effectiveness of his own representation." App. at 119.

### II.

### Jurisdiction and Standard of Review

■ The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 2254. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We exercise plenary review over a district court's deni-

al of habeas relief where it did not conduct an evidentiary hearing. *Jacobs v. Horn,* 395 F.3d 92, 99 (3d Cir.2005).

At oral argument before us, we questioned whether the Delaware Supreme Court decided Thomas' constitutional claims on the merits for purposes of the application of AEDPA's deferential standard of review. As noted above, the District Court concluded that it did so, and we agree. "[Q]ualification for AEDPA deference 'does not require citation of [Supreme Court] cases—indeed, it does not even require awareness of [such] cases, so long as neither the reasoning nor result of the state court decision contradicts them.' " *Priester v. Vaughn,* 382 F.3d 394, 398 (3d Cir.2004) (quoting *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002)). Although the Delaware Supreme Court cited only state law in rejecting Thomas' claims, that decision is entitled to AEDPA deference because, as described above, those state authorities were consistent with applicable Supreme Court precedent, and, in fact, some cited Supreme Court decisions.

Thus, under AEDPA, Thomas is entitled to habeas relief only if the Delaware Supreme Court's resolution of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

## III.

### Discussion

Under the Sixth and Fourteenth Amendments, all criminal defendants have the right to the assistance of counsel as well as the right to be present in the courtroom during trial. *See Powell v. Ala-*

*bama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). A criminal defendant may waive these rights if such a waiver is knowingly and voluntarily made. *See Allen,* 397 U.S. at 342–43, 90 S.Ct. 1057; *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Thomas acknowledges that he did in fact waive both his right to counsel and his right to be present at trial. Instead, the issue presented by this case is whether the Delaware Superior Court committed constitutional error in allowing the case to proceed to trial with no one present for the defense.[3]

The Supreme Court has never faced the precise issue presented by this case. Accordingly, the Delaware Supreme Court's conclusion that the trial judge was not required to appoint counsel was not "contrary to" Supreme Court precedent. *See Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (holding that a state court decision is contrary to clearly established federal law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or if it arrives at a different result from Supreme Court precedent on a materially indistinguishable set of facts).

Whether the Delaware Supreme Court's decision was an "unreasonable application of" clearly established federal law is a closer issue. As we have explained, "an unreasonable application of Supreme Court precedent occurs when a state court applies the correct rule to specific facts in an objectively unreasonable way." *Fischetti v. Johnson,* 384 F.3d 140, 148 (3d Cir.2004). Importantly, a "court that unreasonably extends a rule in a new context

---

**3.** Thomas is in a similar position to a young man who murders his parents and then seeks

the sympathy of the court because he is an orphan.

or, in the alternative, unreasonably fails to extend a rule may also be deemed to unreasonably apply the correct rule." *Id.* "In reviewing the reasonableness of the state courts' application of Supreme Court precedent, we must use as our point of departure the specific holdings of the Court's decisions." *Id.* at 151.

As noted above, *Faretta* held that "a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so." 422 U.S. at 807, 95 S.Ct. 2525. The Supreme Court explained: "The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Id.* at 819, 95 S.Ct. 2525. Thus, a criminal defendant "must be free personally to decide whether in his particular case counsel is to his advantage" and "his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Id.* at 834, 95 S.Ct. 2525 (quoting *Allen,* 397 U.S. at 350–51, 90 S.Ct. 1057 (Brennan, J., concurring)).

However, the Supreme Court also explained that "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. Of course, a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. 2525 (internal citations omitted); *see also McKaskle v. Wiggins,* 465 U.S. 168, 184, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (holding that trial judge may appoint standby counsel, even over defendant's objection, "to relieve the judge of the need to explain and enforce

basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals"). Importantly, if standby counsel is appointed, a defendant does not have a constitutional right to "'hybrid' representation," i.e., the "defendant does not have a constitutional right to choreograph special appearances by counsel" while otherwise representing his or her self. *McKaskle,* 465 U.S. at 183, 104 S.Ct. 944.

Thus, *Faretta* and *McKaskle* clearly establish that the Superior Court *could* have appointed standby counsel for Thomas (either before or after his decision not to be present at trial). However, nothing in those cases *mandated* that the trial judge appoint counsel when Thomas elected to represent himself and then voluntarily declined to participate in the trial. To the contrary, *McKaskle* explained that "the core of the *Faretta* right" is that "the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury." 465 U.S. at 178, 104 S.Ct. 944. Thus, "[i]f standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak *instead* of the defendant on any matter of importance, the *Faretta* right is eroded." *Id.* (emphasis in original).

Here, Thomas reaffirmed his decision to represent himself after he first voiced his desire not to be present at the trial. Indeed, the record makes clear that Thomas declined to participate in the trial to protest what he believed to be violations of his constitutional rights. Thus, as the State contended at oral argument, if the Superior Court had appointed counsel and permitted such counsel to conduct the defense

in Thomas' absence, the Court arguably would have violated his right to control his defense.

The Court of Appeals for the Second Circuit faced a somewhat similar issue in *Clark v. Perez*, 510 F.3d 382 (2d Cir.2008). There, the habeas petitioner (a former member of the Weather Underground) alleged that her Sixth Amendment rights were violated when the state trial judge "allowed her to appear *pro se* ... after she had given ample notice of her intention to use a disruptive, political defense, including an unwillingness to be present at trial." *Id.* at 397 (quotation omitted). The Second Circuit rejected that argument because the petitioner "conceded that her absence was a tactic to influence the jury in her favor" and therefore "[i]f she faced trial without the advantages guaranteed by the Sixth Amendment, that was not by the trial judge's imposition, but by her own informed choice, which the trial judge was bound to respect." *Id.* Similarly, as the District Court concluded, Thomas' "refusal to participate in his trial was his way of controlling the case he either did, or did not, present to the jury and the court." App. at 119.

On the other hand, *Clark* is distinguishable from our case in important ways. The petitioner in that case participated in parts of the trial, including a lengthy closing statement to the jury. Indeed, the Second Circuit described the proceedings in *Clark* as "intensely adversarial," 510 F.3d at 397, whereas Thomas' case involved a complete breakdown of the adversarial process.

Under such circumstances, important countervailing considerations support the appointment of counsel. As the Second Circuit recognized in another case, "[i]f no counsel is appointed to represent an absented *pro se* defendant, there is a real danger that the ensuing lack of 'rigorous

adversarial testing that is the norm of Anglo–American criminal proceedings,' [*Maryland v.*] *Craig*, 497 U.S. [836,] 846, 110 S.Ct. 3157, 111 L.Ed.2d 666 [ (1990) ], will undermine 'the accuracy of the truth-determining process' by eliminating 'the trier of fact['s] ... basis for evaluating the truth of the [testimony],' *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 27 L.Ed.2d 213[ ] (1970)." *Davis v. Grant*, 532 F.3d 132, 143 (2d Cir.2008). Further, "[a] criminal trial is not a private matter; the public interest is so great that the presence and participation of counsel, even when opposed by the accused, is warranted in order to vindicate the process itself." *Mayberry v. Pennsylvania*, 400 U.S. 455, 468, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) (Burger, C.J., concurring).

In light of these considerations, the Second Circuit in *Davis* concluded that, "if we were reviewing the issue on a blank slate, we might be inclined to conclude ... that the Sixth Amendment requires that a defendant who is involuntarily removed from the courtroom [for misconduct] must be provided with replacement counsel during his absence." *Davis*, 532 F.3d at 144. However, that case *held* that a state decision not to appoint counsel was not an unreasonable application of *Faretta*, *McKaskle*, and *Allen* because "endorsing such a mandate requires far more than a mere 'extension' of those [cases]" and therefore affirmed the denial of habeas relief. *Id.* at 145.

Further, the basis for imposing such a mandate in Thomas' case is arguably even weaker than in *Davis* because Thomas voluntarily declined to participate in the trial, whereas Davis was involuntarily removed for disrupting the trial. As the Second Circuit explained in distinguishing *Clark* from *Davis*: "Whether a defendant's voluntary choice to leave a courtroom constitutes serious and obstructionist misconduct

of the sort that would allow a trial judge to terminate self-representation is not as clear cut as when a defendant is removed from the courtroom because of obnoxious behavior." *Id.* at 147–48

The overriding factor for our disposition is that this case is before us on habeas. If this appeal had come before us on a direct appeal from a federal court presented with a defendant who waived his right to counsel and then absented himself from the courtroom, we might hold differently.

Given the weighty interests on both sides of the question—a defendant's interest in controlling his or her defense against the public's interest in fair and effective criminal trials—and the lack of guidance from the Supreme Court on this precise issue, we cannot conclude that the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

## IV.

### Conclusion

For the forgoing reasons, we will affirm the judgment of the District Court denying Thomas' petition for habeas relief.

POLLAK, District Judge, concurring.

I join the judgment of the court affirming the District Court's denial of appellant's petition for habeas corpus. And I join the court's fine opinion. I will add a few words.

The court says:

The overriding factor for our disposition is that this case is before us on habeas. If this appeal had come before us on a direct appeal from a federal court presented with a defendant who waived his right to counsel and then absented himself from the courtroom, we might hold differently.

Under the hypothetical circumstances posited by the court, I not only *might* hold differently, I *would* hold differently. I would have this court direct, as a matter of obligatory circuit practice, that a federal trial judge, confronted by a criminal defendant who (1) did not have retained counsel and refused to be represented by appointed counsel, and (2) then absented himself from the courtroom, must appoint counsel to represent the *in absentia* defendant. Underlying this federal practice rule would be the imperative of the Constitution's Fifth ("due process of law") and Sixth ("Assistance of Counsel") Amendments.[4]

A counterpart of this federal constitutional rule of federal court practice would be a federal constitutional rule of state court practice—namely, that a state trial judge would, in like circumstances, be required by the Fourteenth Amendment's due process clause (*cf. Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) *and Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)) to appoint counsel for the absent defendant.

If I am right in the foregoing, the trial of Andrew R. Thomas was conducted in a manner that contravened his constitutional rights. The fact that he invited this contravention by rejecting the assistance of counsel and by absenting himself from his

---

4. "An absent defendant cannot present witnesses on his behalf or cross-examine prosecution witnesses. An absent defendant cannot object to inadmissible evidence. An absent defendant cannot question potential jury members, present an opening statement, or offer a summation. In short, an absent defendant can protect neither his constitutionally guaranteed rights nor his interest in the outcome of the proceeding. Appointing counsel to replace an absented defendant, however, goes a long way towards mitigating those concerns." *Davis v. Grant,* 532 F.3d 132, 143 (2nd Cir.2008).

trial is of no constitutional moment. The obligation to protect Thomas's constitutional rights lay not with Thomas but with the judge. And there is now no available judicial mechanism for remedying the deficiency that has resulted in what I deem to be a constitutionally flawed conviction and resultant sentence. Today we determine that federal habeas corpus is of no avail because, as the court correctly holds, AEDPA stands in Thomas's way. The Supreme Court having had no occasion squarely to address the constitutional problem presented by a criminal trial going forward to conviction with the defendant not present and not represented by counsel, the adverse ruling of the Delaware Supreme Court did not "result[ ] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

A potential remedy did exist, but the time for asserting it was long ago. Thomas could have petitioned the Supreme Court for certiorari to review the decision of the Delaware Supreme Court. A grant of certiorari might have led the Supreme Court to promulgate the constitutional rule that I submit is appropriate. But Thomas did not petition for certiorari. Perhaps he was not acquainted with certiorari. He was proceeding *pro se*.