**Supreme Court**

No. 2007-236-C.A.

(P1/04-1286A)

| | |
|---|---|
| State | : |
| v. | : |
| John J. Eddy. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2007-236-C.A.
(P1/04-1286A)

State                :

v.             :

John J. Eddy.           :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.** Is a trial justice constitutionally required to appoint counsel to represent a pro se defendant who voluntarily absents himself from trial? We hold that neither the United States Constitution, nor article 1, section 10 of the Rhode Island Constitution mandates that counsel be appointed in such a situation. For the reasons set forth in this opinion, we affirm the judgment of conviction for three counts of first-degree child molestation sexual assault in violation of G.L. 1956 § 11-37-8.1,[1] and two counts of first-degree sexual assault in violation of § 11-37-2.[2]

---

[1] General Laws 1956 § 11-37-8.1 provides that "[a] person is guilty of first degree child molestation sexual assault if he or she engages in sexual penetration with a person fourteen (14) years of age or under.

[2] Section 11-37-2 provides, in pertinent part, that "[a] person is guilty of first degree sexual assault if he or she engages in sexual penetration with another person, and if any of the following circumstances exist: * * * (2) The accused uses force or coercion."

- 1 -

# I

## Facts and Travel

### A

### The Appointment and Discharge of Defendant's Attorneys

On April 21, 2004, defendant John J. Eddy was indicted on three counts of first-degree child molestation sexual assault and two counts of first-degree sexual assault. On September 13, 2004, an attorney in the Office of the Public Defender entered his appearance on behalf of defendant. On December 16, 2004, defendant filed a motion to discharge that attorney and indicated that he wished to represent himself. On that same day, the motion justice[3] allowed defendant's attorney to withdraw, and she appointed a private attorney (defendant's second attorney) as standby counsel.[4]

On February 17, 2005, the trial justice was assigned to defendant's case. At the beginning of a hearing on that date, the trial justice addressed defendant's decision to act in a pro se capacity. An exchange between defendant and the trial justice proceeded as follows:

> "THE COURT: * * * You have an absolute right, as far as I'm concerned, to represent yourself. You appear to be competent. * * * Our law is clear, if you wish to represent yourself, you may do so. I would just say to you, you're undertaking a very perilous task in representing yourself. I was looking at the five counts that have been lodged against you by way of indictment. If you're convicted of any one of these counts, you face the responsibility of a rather long jail sentence. Are you aware of that?
> "MR. EDDY: Yes, your Honor, I am.

---

[3] We will refer to the Superior Court justice who heard the preliminary motions in this case as the motion justice, and we will refer to the justice who presided over the later motions and the trial as the trial justice.

[4] The proceedings that occurred on December 16, 2005 are unclear from the record, because defendant has not provided us with a transcript from that day. However, it is clear from defendant's written motion that he vehemently requested that the court discharge his attorney from the Office of the Public Defender, and that private counsel was then appointed on a standby basis.

"THE COURT: All right. And is it your request today to represent yourself?

"MR. EDDY: Yes, your Honor.

"THE COURT: It's your wish to do so for all aspects of this case?

"MR. EDDY: It is, your Honor.

"THE COURT: All right. I'm going to grant his motion to represent himself. * * * I am going to require you to have the assistance of [defendant's second attorney] as standby counsel."

However, when defendant's second attorney informed the trial justice that defendant had filed a disciplinary complaint against him, and that defendant had expressed his intent to press that complaint with Disciplinary Counsel, the trial justice released defendant's second attorney from the case. The trial justice explained to defendant that if he continued in the case pro se, then the trial justice was going to hold him to "the exact same standard as any attorney" and that he would "get no greater or lesser consideration because [he was] representing [him]self." The defendant indicated to the trial justice that he understood. The trial justice then reminded defendant:

"You have a very difficult row to hoe[.] * * * You're entitled to have an attorney represent you. I'm happy to appoint one for you. * * * [But] I'm not going to * * * give you any special consideration because of the difficulty that you seem to have placed yourself in [by choosing to represent yourself]."

On April 28, 2005, the trial justice conducted a bail hearing, during which the complaining witness testified. Midway through the complaining witness's testimony, defendant requested the appointment of still another attorney. The state objected, declaring that that request was merely a delay tactic. After hearing the state's objection, the trial justice addressed defendant:

"THE COURT: You already fired two attorneys. What is this great epiphany now? * * * [W]hy [do] you suddenly have this innovation now that you think you need a lawyer after protesting on this record, in a rather forceful manner, that you didn't have any

- 3 -

trust with attorneys, you didn't trust them, you didn't want to be represented by an attorney and you felt you could adequately represent yourself[?]

"MR. EDDY: I did make the statement that I had a lack of trust with attornies [sic]. I can say why. My record will prove I have been represented numerous times.

"THE COURT: So what happens when we appoint another attorney for you and you're dissatisfied with that attorney, and you fire that attorney? Do you think that the tail is going to wag this dog?

"MR. EDDY: No. I believed up front I can handle this. I can see now that I'm drowning. I'm over my head here. I can't handle this.

"* * *

"THE COURT: You had every opportunity. You had two attorneys already. You know you're not the first person that has been here trying to play the court system like a violin. How many lawyers do you think you're going to get here? You can't afford an attorney, can you?

"MR. EDDY: No, sir.

"THE COURT: You're entitled to have an attorney represent you that is a competent attorney[,] not to have that attorney do what you think ought to be done because you're not a lawyer, but to competently represent you in these proceedings. You have already discharged two people, well known to this court, who are excellent and well qualified to represent you in this case.

"Now, what makes you think that we're going to appoint a third attorney for you so that when it becomes convenient for you, you can simply dismiss that attorney because of some alleged disagreement or inability to communicate?"

The trial justice then ruled on defendant's request. He said:

"The Court is going to rule that you have affirmatively waived your right to an attorney for the purposes of a bail hearing that has been set down for today's hearing.

"This matter has been pending for over two [years]. You were given adequate notice to prepare for this hearing. It was extended specifically from your own request to this later date. * * * [F]rom my reading of the record and from my reading of this file, all of the attempts to provide you with prior counsel, to provide you with a bail hearing to which you are entitled within ten days of your arrest have been thwarted by you and you alone and because you have waived your right to an attorney for the purposes of this bail hearing and have during the bail hearing made a plea for an attorney, I will appoint an attorney to you but not for the purposes

- 4 -

of this hearing for which you have clearly and irrevocably waived your right.

"There has to be some reasonable rules of procedure in dealing with a serious case like this. This young woman, who is the complaining witness and the putative victim in this case, has rights as do you. This matter has been pending for over two years now * * * through nobody's efforts but your own.
"* * *

"She has a right to get this behind her.
"I will appoint an attorney for you for the remainder of this case.
"* * *

"I'm making arrangements to have a very highly qualified attorney appointed to represent you."

After the bail hearing on April 28, 2005, the trial justice appointed another attorney (defendant's third attorney)—a lawyer with approximately thirty years of experience—to represent defendant. However, in a letter dated August 3, 2005, defendant once again requested that the third attorney be "completely removed" from his case, and a formal motion to release was filed on August 17, 2005. Two days later, on August 19, 2005, the trial justice held a hearing on defendant's motion to release the third attorney. The following exchange took place:

"THE COURT: All right. Well, our case law is rather clear, Mr. Eddy has a right to discharge his lawyer at any time, for any reason, and he has the right to represent himself.
"* * *

"At the bail hearing * * * the Court appointed [defendant's third attorney] who has been before this bar for over 30 years. He's more than qualified. He has extensive experience in capital cases of all types including the matter before the court of the allegations of child molestation.

"From all accounts and appearances, he had been more than diligent in representing the interests of Mr. Eddy but, as I indicated, the case law is clear, Mr. Eddy may discharge his attorney for cause or no cause any time he wishes. That, however, will not delay these proceedings.

"As I told Mr. Eddy when this case was assigned back in the spring, this matter is going to proceed in an orderly manner.

"You will represent yourself, but I have some authority in this case, Mr. Eddy, and I will ask [defendant's third attorney] if he is willing to stay on as standby counsel in this matter. Are you willing to do that?"

> "[DEFENDANT'S THIRD ATTORNEY]: Yes, Your Honor, definitely."

The trial justice then addressed defendant in order to, once again, ensure that he fully understood what he was undertaking by representing himself. The colloquy occurred as follows:

> "THE COURT: Well, do you understand what you're taking on[?]
> "THE DEFENDANT: I believe I do, Your Honor.
> "THE COURT: All right. You're going to be required to impanel a jury. You're going to be required to examine and cross-examine witnesses if you wish. As I indicated to you before, you will not receive any special consideration from this court because you're undertaking this task which I think is rather daunting for someone who does not have legal training.
> "I will state, for the record, that I think you have above-average intelligence which, of course, is my observation but which is at least a benefit to you, but you're undertaking a task here which is extremely difficult. There is a lot at stake here.
> "You're charged with five capital offenses. A conviction of any one of which has a maximum penalty of life in prison.
> "Now, I'm sure you have given significant reflection on this in your various writings that you've made to the Court and your various motions so if you wish to represent yourself, you may do so. Is that your desire here today?
> "THE DEFENDANT: It is, Your Honor.
> "THE COURT: All right. Then you will represent yourself.
> "* * * The matter is going to be set down for trial in a matter of two or three weeks and [defendant's third attorney] will be there for your assistance if you wish. You don't need to consult him, but if you wish to consult him, he will be willing and able to assist you. I wish you well in this endeavor, but you're undertaking a very, very difficult task."

On September 27, 2005, defendant again expressed his desire to completely remove his third attorney from the case and conveyed that he no longer wished that he remain as standby counsel. Again, the trial justice rendered a lengthy recitation of defendant's history of requesting—and then firing—attorneys. After doing so, the trial justice insisted that defendant's third attorney remain on the case on a standby basis. In response, defendant again requested that he be permitted to go forward in the case alone, stating:

- 6 -

"I want the court record to reflect that while I know that I'm entitled to counsel, I'm also entitled to represent myself. Part of that Sixth Amendment right is the right to competent counsel, and I don't feel that [defendant's third attorney] is competent. I presently have a complaint questioning his competency pending before the disciplinary counsel."

The trial justice again informed defendant that the trial justice had made a determination that defendant's third attorney was competent and that he would remain on the case as standby counsel. The defendant then objected to "an attorney" whom defendant believed to be incompetent "being forced upon [him]." In response, the trial justice asked:

"THE COURT: Do you want me to excuse him as standby counsel?
"THE DEFENDANT: I certainly do.
"THE COURT: I will excuse him, on the record, from standby counsel. You will not get another standby counsel appointed to assist you. You will not have any other counsel appointed. You will represent yourself. Proceed.
"THE DEFENDANT: Thank you, Your Honor."

Almost four months later, on January 18, 2006, the trial justice heard defendant's motion for a continuance. Although it had already been twenty-one months since defendant was indicted, the trial justice nonetheless granted a continuance for over one month "to try to allow [defendant] the farthest reach of due process and elemental fairness that [he could] without abusing the system."

**B**

**Trial and Sentencing**

On February 22, 2006, the matter finally proceeded to trial. The trial justice first provided defendant with an extensive blueprint of how the trial would proceed, immediately before jury selection was to begin. At that point, defendant again inquired about whether he could have counsel appointed to represent him. The trial justice informed defendant that he had

had "ample opportunity" to be represented by appointed counsel, and he declined to appoint another attorney on the very morning that the trial was to commence.

It is significant that, before jury selection began, the trial justice instructed the jury pool that defendant had opted to exercise his constitutional right to represent himself, but that that fact "should not engender any sympathy for him[,] * * * nor should it engender any prejudice or bias." The parties then commenced jury selection, and the jury was sworn.

The next morning, defendant again requested the appointment of counsel for the purpose of assisting him in plea negotiations. The trial justice responded:

> "All right. Mr. Eddy, the jury has been sworn. That means jeopardy has now attached. We have to go forward with this trial at this time. You have steadfastly resisted all attempts by this Court to afford you competent reasonable legal assistance.
> "Now, if you wish to have a brief period of time to discuss with the prosecution whether or not it is possible for you to enter a plea today, I will allow some reasonable time for that to take place. But, I'm not going to appoint an attorney for you for that process. You had ample opportunity to do that."

At that point, defendant expressed his desire to absent himself from the trial in the event a plea agreement was not reached. Specifically, he said, "I don't want to be in the courtroom so the trial may proceed in my absence * * *. I ask that I be allowed to be removed from the courtroom during this process because I don't want to cause a situation of forced removal."

The parties discussed a possible resolution of the case by plea for almost an hour, but they were unable to reach an agreement. The trial justice then addressed defendant's expressed desire to absent himself from the trial proceedings. The following exchange occurred:

> "THE COURT: All right. Now, when we recessed at 10:00 you indicated to me that you voluntarily wanted to absent yourself in this trial. That, if I did not [accede] to your desire you would do something which I would assume to be something to be inordinate behavior that would cause you to be removed from this forum. Is that correct?

"MR. EDDY:  Yes, your Honor.

"THE COURT:  Is it your true desire not to participate in this trial in any way whatsoever?

"MR. EDDY:  Yes, your Honor.

"THE COURT:  You do so understand by taking part in this process yesterday by representing yourself, which as you know we all recognize you have an absolute constitutional right to do and by putting a jury in the box which you participated in yesterday and having me swear the jury, we have what we call jeopardy has now attached.  Do you understand that?

"MR. EDDY:  [The prosecutor] explained.

"THE COURT:  That means this case has to go forward or be disposed of by a plea by you or go forward to a verdict by this jury. You have a constitutional right to be present[] at this trial.  Are you aware of that?

"MR. EDDY:  Yes.

"* * *

"THE COURT:  * * * You are not giving up the right to trial but by voluntarily absenting yourself and not being represented by any other counsel you are giving up your right to confront and cross[-]examine the State's witness which is a very important Sixth Amendment right that you have.

"* * *

"THE COURT:  * * * I have no intention of keeping you here against your will * * *. If you don't want to be here for this proceeding I'm going to allow you to withdraw.  I am going through the rights that you have here so the record is clear that you as an intelligent adult are making these decisions based upon a knowing, willing, and intelligent waiver of your constitutional right to be present at trial.  Do you understand that?

"MR. EDDY:  Yes.

"THE COURT:  Are you in fact asking me to allow you to absent yourself from this trial?

"MR. EDDY:  I am, your Honor.

"THE COURT:  So you know you are giving up your right of confrontation of witnesses, giving up your right to cross-examine witnesses.  You are giving up your right to testify personally and also present witnesses on your behalf.  Do you understand that?"

The defendant then said that he felt his right to call witnesses had already been taken away from him, but that he understood the rest of the trial justice's recitation of his rights.  The trial justice explained that defendant's right to call witnesses had not in any way been impaired, and he then asked defendant, "Are you asking me to do this knowingly, willingly and voluntarily?"  The

defendant responded, "I am, your Honor," and then he informed the trial justice that he did not desire to be present for the reading of the verdict at the conclusion of the trial. The defendant was then escorted from the courtroom, and the jury was brought in.

Significantly, the trial justice explained to the jury that defendant's voluntary absence from trial "in no way [affected] the rights that he ha[d] as a defendant," including "[t]he presumption of innocence." He then instructed the jury that it "must not in any way prejudice Mr. Eddy for his own desire to be absent from this proceeding."

The trial continued in defendant's absence, and the state presented its case.[5] On several occasions during the course of the trial, the trial justice inquired as to whether defendant had any desire to resume participation in the proceedings. The defendant declined the trial justice's invitation to participate each time. After the state's closing argument, the trial justice instructed the jury. In addition to the instructions that are customarily given in a criminal case, the trial justice also instructed the jury that defendant's absence from trial "should have no bearing whatsoever on * * * [his] presumption of innocence," and that the jury was "not to take [his] absence] as any indication of guilt." He informed the jury of defendant's privilege against self-incrimination, and he instructed that no inferences of guilt could be drawn from defendant's decisions not to testify or offer any evidence.

On February 24, 2006, the jury found defendant guilty of all five counts, and a judgment of conviction was entered.[6] The trial justice sentenced defendant to life imprisonment on each of the first three counts, to run concurrently, and life imprisonment for each of the last two counts,

---

[5] After the state presented its case, the trial justice declared that, had a motion for judgment of acquittal been made by defendant under Rule 29 of the Superior Court Rules of Criminal Procedure, the evidence presented by the state was sufficient to sustain a conviction on all counts. Therefore, the trial justice ruled that he would have denied a Rule 29 motion if defendant had, in fact, made such a motion.

[6] No motion for a new trial was filed in this case.

to run concurrently with each other, but to run consecutively to the life sentences imposed for the first three counts. The defendant timely appealed to this Court.[7]

## II

## Standard of Review

It is well settled that, "when confronted with questions of law on appeal, this Court undertakes a de novo review." State v. Lopez-Navor, 951 A.2d 508, 510-11 (R.I. 2008). Likewise, we review "alleged violations of constitutional rights" de novo. State v. Foster, 842 A.2d 1047, 1049 (R.I. 2004). However, "[e]ven when the de novo standard is applied to issues of constitutional dimension, we still accord a hearing justice's findings of historical fact, and inferences drawn from those facts, great deference in conducting our review." Thornton v. State, 948 A.2d 312, 316 (R.I. 2008).

## III

## Discussion

Before this Court, defendant argues that: (1) the waiver of his right to counsel at trial was not voluntary; (2) even if his waiver was voluntary, he later revoked that waiver; (3) the trial justice was constitutionally required to appoint counsel—at least on a standby basis—to represent defendant after he chose to proceed pro se and then absented himself from the trial; (4) the trial justice should not have permitted defendant to absent himself from the trial under Rule 43 of the Superior Court Rules of Criminal Procedure, because he was charged with "the Rhode Island equivalent of a capital crime"; (5) his conviction should be overturned because he was tried in Providence County on a criminal offense that allegedly occurred in Kent County, which defendant alleges was an improper venue; and (6) the cumulative effect of all the purported

---

[7] The defendant appeared pro se before this Court.

errors requires that his conviction be overturned.  We shall address each of these arguments in turn.

## A

## Waiver of Right to Counsel

The defendant argues that he did not voluntarily waive his right to counsel, and, as a result, he should be afforded a new trial.  The defendant attempts to demonstrate that his waiver was involuntary by distinguishing the facts in his case from those in State v. Thornton, 800 A.2d 1016 (R.I. 2002), in which this Court held that Thornton validly waived his right to counsel.[8]

"The Sixth Amendment to the United States Constitution and article 1, section 10, of the Rhode Island Constitution provide that in all criminal prosecutions, the accused enjoys the right to the assistance of counsel." State v. Laurence, 848 A.2d 238, 252 (R.I. 2004).  However, these constitutional provisions "also allow[] a defendant in a criminal trial to represent himself, provided that his waiver of counsel is valid." Id. (citing State v. Spencer, 783 A.2d 413, 416 (R.I. 2001); see also Faretta v. California, 422 U.S. 806, 819 (1975) ("The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense.").

---

[8] In State v. Thornton, 800 A.2d 1016, 1022 (R.I. 2002), the defendant rejected the representation of three court-appointed attorneys, but standby counsel was appointed to assist him.  Prior to trial, the defendant indicated that he would accept his standby counsel as his attorney, but on the condition that he receive a continuance of at least ninety days. Id. at 1024. The trial justice refused to continue the trial any further, so the defendant elected to proceed pro se with the assistance of his standby counsel, whom the defendant relied on during the trial. Id. at 1024-25. After being convicted, the defendant conceded, before this Court, that his waiver of counsel was voluntary, but he argued that his waiver "was not made knowingly and intelligently." Id. at 1022. This Court affirmed his conviction, holding that his waiver was knowing and intelligent. Id. at 1027, 1045.

It is well settled that "[t]his Court employs a two-prong analysis to review the validity of a defendant's waiver of counsel: first, we must determine whether the waiver was 'voluntary'; then, we must determine whether it was 'knowing and intelligent.'" State v. Brumfield, 900 A.2d 1151, 1153 (R.I. 2006) (quoting Laurence, 848 A.2d at 253). "When considering the validity of the waiver, we examine the totality of the circumstances." Id. (quoting Laurence, 848 A.2d at 253).

In Laurence—a case that bears a striking resemblance to the matter that is before us—we held that a "defendant's 'repeated refusal to accept the services of competent court-appointed defense counsel demonstrates clearly the voluntary waiver of his right to counsel * * *.'" Laurence, 848 A.2d at 253 (quoting Thornton, 800 A.2d at 1026). Laurence was offered the "services of three court-appointed attorneys and one standby counsel, all of whom" he dismissed, despite continued efforts by the trial justice to convince him to accept their representation. Id. at 254, 255. Additionally, Laurence "asserted many times at trial that it was not his desire to represent himself and that he felt coerced into doing so * * *." Id. at 254. Nonetheless, this Court held that "defendant's actions, rather than his words, demonstrate[d] that he waived his right to counsel," id. at 254, and "his continued rejection of competent representation [wa]s the equivalent to a voluntary waiver of his Sixth Amendment right to counsel." Id. at 255. Moreover, this Court held that "he was not in any way unconstitutionally forced to proceed pro se." Id. at 253 (quoting Thornton, 800 A.2d at 1026).

We believe that the facts of Laurence are remarkably similar to the matter that is before us. The defendant in this case was provided with three competent attorneys to represent him, and each time he vehemently insisted that each be removed from his case. However, unlike Laurence, the defendant in this case repeatedly and forcefully requested that he be allowed to

represent himself. Furthermore, the trial justice continually reminded defendant of the perils of proceeding without an attorney—at least on a standby basis—yet defendant insisted on discharging all of his appointed attorneys. After defendant objected to having his third appointed attorney remain on the case as standby counsel, the trial justice asked defendant:

> "THE COURT: Do you want me to excuse him as standby counsel?
> "THE DEFENDANT: I certainly do.
> "THE COURT: I will excuse him, on the record, from standby counsel. You will not get another standby counsel appointed to assist you. You will not have any other counsel appointed. You will represent yourself. Proceed.
> "THE DEFENDANT: Thank you, Your Honor."

Finally, the trial justice indicated that he believed that defendant's motive for repeatedly requesting and firing attorneys was to delay the proceedings. He told defendant, "all of the attempts to provide you with prior counsel, to provide you with a bail hearing to which you are entitled within ten days of your arrest have been thwarted by you and you alone. * * * This matter has been pending for over two years now * * * through nobody's efforts but your own."

Based on the totality of the circumstances, we are confident that defendant's waiver of his right to counsel was voluntary. Both his actions and his words demonstrate that his waiver was the product of his own free will. Despite defendant's purported grievances with the manner in which his appointed attorneys conducted his defense, it is well settled that "[t]he Sixth Amendment provides no right to counsel 'who would blindly follow [a defendant's] instructions.'" Thornton, 800 A.2d at 1029 n.14 (quoting McQueen v. Blackburn, 755 F.2d 1174, 1178 (5th Cir.), cert. denied, 474 U.S. 852 (1985)). "Nor is there any 'absolute right to counsel of one's choice.'" Id. (quoting United States v. Peister, 631 F.2d 658, 661 (10th Cir. 1980), cert. denied, 449 U.S. 1126 (1981)). As was the case in Laurence, 848 A.2d at 254-55, "[i]t seems

obvious that defendant was not willing to work with any counsel in any capacity. This was no fault of the judiciary, which bent over backwards to attain representation for him."[9]

In his brief, defendant attempts to distinguish the facts of his case from those of Thornton. However, in Thornton, 800 A.2d at 1026, the defendant conceded that his waiver was voluntary, and thus, the voluntariness of his waiver was not an issue that was before this Court. Id. at 1026. Instead, the salient issue in that case was whether Thornton's waiver was "knowing and intelligent," such that it satisfied the second prong of the waiver-of-counsel analysis. Id. Because defendant asserts only that his waiver was not voluntary, and he does not argue that it was not knowing and intelligent, defendant's reliance on Thornton is not persuasive.[10] Accordingly, we hold that defendant validly waived his right to counsel.

**B**

**Revocation of Waiver**

Next, defendant argues that, even if he had previously waived his right to counsel, he later revoked that waiver at trial. Specifically, he contends that the trial justice erred by not making any specific findings as to defendant's intent behind his request for counsel at trial and, further, that he erred by declining to appoint counsel for defendant after he revoked any waiver that he may have made previously. The state counters by arguing that once a defendant waives his right to counsel, the trial justice has discretion in determining whether counsel should be

_____

[9] We observe that defendant has also fired more than one attorney appointed to represent him on this appeal.

[10] Nonetheless, after a thorough review of the record, it is abundantly clear to us that defendant's waiver was knowing and intelligent, based on the numerous detailed colloquies between him and the trial justice, as well as the trial justice's finding that defendant had "above-average intelligence." See State v. Spencer, 783 A.2d 413, 416 (R.I. 2001) ("[T]he simplest method to determine whether a waiver of counsel is knowing or voluntary may be a detailed colloquy between the trial court and the defendant, [however] such an inquiry is not constitutionally required." citing Lopez v. Thompson, 202 F.3d 1110, 1117 (9th Cir.), cert. denied, 531 U.S. 883 (2000)).

- 15 -

appointed and that the trial justice in this case was well within his discretion to deny defendant's request at such a late stage in the proceedings. We agree with the state.

When a defendant seeks the appointment of counsel after he or she already has waived that right, a trial justice has more latitude in determining whether to provide the defendant with representation. See United States v. Leveto, 540 F.3d 200, 207 (3d Cir. 2008), cert. denied, 557 U.S. 906 (2009); United States v. Solina, 733 F.2d 1208, 1211-12 (7th Cir.), cert. denied, 469 U.S. 1039 (1984). The United States Court of Appeals for the Third Circuit described this principle as follows:

> "[W]e find wide agreement that, once waived, the Sixth Amendment right to counsel is no longer absolute. * * * We reaffirm that questions arising from a defendant's Sixth Amendment absolute right to professional legal counsel receive plenary review. * * * Yet, once the right has been properly waived, as is the case here, we are persuaded by the broad consensus of other courts that the consideration of a defendant's post-waiver request for counsel is well within the discretion of the district court.
>
> "Moreover, while we have a strong interest in safeguarding a defendant's access to professional legal representation * * * other factors necessarily play an important role in a district court's deliberation of a post-waiver request for counsel. Certainly, evidence of a defendant's dilatory motive is properly considered as a basis for denial. Moreover, particularly as the trial date draws nearer, the district court can and should consider the practical concerns of managing its docket and the impact that a request may have on its general responsibilities for the prudent administration of justice." Leveto, 540 F.3d at 207.

Additionally, the United States Court of Appeals for the Seventh Circuit has held that

> "[a] criminal defendant has a constitutional right to defend himself; and with rights come responsibilities. If at the last minute he gets cold feet and wants a lawyer to defend him he runs the risk that the judge will hold him to his original decision in order to avoid the disruption of the court's schedule that a continuance granted on the very day that trial is scheduled to begin is bound to cause." Solina, 733 F.2d at 1211-12.

Other courts have agreed. See United States v. Merchant, 992 F.2d 1091, 1095 (10th Cir. 1993); Menefield v. Borg, 881 F.2d 696, 700 (9th Cir. 1989).

In this case, on the very morning that the trial was to begin, defendant asked the trial justice what his position would be "should defendant request assignment of counsel." The trial justice responded that he "would deny it if the State [object]ed," reasoning that the state and the complaining witness had the right to move forward and adjudicate the matter. The trial justice then told defendant that he had "had ample opportunity on every occasion to make that request" but that the trial justice was not going to appoint counsel on the day the trial was to begin.

Then, after the jury was empaneled and sworn, defendant explicitly requested that counsel be appointed for the purpose of "the possibility of plea negotiations" with the state. The trial justice informed defendant that jeopardy had attached and that the trial needed to move forward. The trial justice reiterated that defendant "had ample opportunity to" enter into plea negotiation and had "steadfastly resisted all attempts by th[e] Court to afford [him] competent reasonable legal assistance."

The defendant argues that the trial justice erred by not making an explicit determination as to whether defendant's post-waiver request for counsel was made in bad faith for the purpose of delay or disruption; however, it is our opinion that the trial justice's determinations were sufficient. As the Third Circuit has said:

> "The significance of representation by professional legal counsel demands that any decision that touches upon the availability of counsel must be investigated and explained on the record. Yet, we do not insist upon a formal inquiry or colloquy where the rationales for the request and decision are clearly apparent on the record." Leveto, 540 F.3d at 208.

Given defendant's colorful history of requesting representation, then stridently demanding that his attorneys be discharged, there is ample evidence to support the trial justice's

conclusion that defendant had attempted to delay the proceedings at every stage of this case. As in Leveto, 540 F.3d at 208, "[i]mmediately before [defendant]'s morning-of-trial request for counsel," the trial justice in this case found that defendant had consistently attempted to delay his trial. The trial justice explained:

> "[T]his trial has been continued six or seven times at the request of the defendant. He has been allowed to do whatever he wished to do with regard to the filing of various motions. The State has filed for discovery from him and has not received it. The State has done everything reasonably possible to allow Mr. Eddy the latitude to prepare himself for this case and the Court, I think, has bent over backwards in its efforts to afford a reasonable time frame for Mr. Eddy to prepare himself also. So, for those reasons the Court is not going to continue this matter any further."

Additionally, at an earlier stage of the proceedings, the trial justice found that "all of the attempts to provide [defendant] with prior counsel, to provide [him] with a bail hearing * * * have been thwarted by [defendant] alone." Furthermore, the trial justice said that "[t]his matter has been pending for over two years now * * * through nobody's efforts but [defendant's] own." Thus, there is ample evidence on the record to demonstrate that defendant's dilatory tactics were at least one factor that the trial justice looked to when denying defendant's request. See Leveto, 540 F.3d at 207 ("Certainly, evidence of a defendant's dilatory motive is properly considered as a basis for denial [of a post-waiver request for counsel].").

Furthermore, defendant made this request for counsel after the trial had already commenced and the jury had been empaneled and sworn. Thus, jeopardy had already attached. State v. Francis, 719 A.2d 858, 859 (R.I. 1998) ("In a jury trial, jeopardy attaches when the jury is empaneled and sworn."). Indeed, the trial justice explicitly made that finding after defendant's request for counsel when he said: "Mr. Eddy, the jury has been sworn. That means jeopardy has now attached. We have to go forward with this trial at this time." Thus, defendant's request for

the appointment of a fourth attorney was at an extremely late stage of the game and would have caused even further delay. See Leveto, 540 F.3d at 207 ("[P]articularly as the trial date draws nearer, the [trial] court can and should consider the practical concerns of managing its docket and the impact that a request may have on its general responsibilities for the prudent administration of justice.").

Moreover, defendant explicitly stated that his reason for requesting another attorney was for the "possibility of plea negotiations" with the state. Consequently, the appointment of a fourth attorney would have been only for a narrow and limited purpose.[11] However, as the United States Court of Appeals for the Fifth Circuit has held, "[a] defendant is not entitled to 'choreograph special appearances by counsel,' * * * or repeatedly to alternate his position on counsel in order to delay his trial or otherwise obstruct the orderly administration of justice." United States v. Taylor, 933 F.2d 307, 311 (5th Cir.), cert. denied, 502 U.S. 883 (1991) (quoting McKaskle v. Wiggins, 465 U.S. 168, 183 (1984)).

Accordingly, "the rationales for the [defendant's] request and [the trial justice's] decision are clearly apparent on the record," and, therefore, "a formal inquiry or colloquy" was not necessary. Leveto, 540 F.3d at 208. Furthermore, given defendant's history of causing inordinate delay and his distrust of attorneys—and in the interests of judicial economy and the orderly administration of justice—we conclude that the trial justice was well within his discretion to deny defendant's eleventh-hour, post-waiver request for counsel.

---

[11] We note that plea negotiations are a critical stage of criminal proceedings, at which a defendant enjoys the right to counsel, unless that right is waived. Missouri v. Frye, 132 S.Ct. 1399, 1406 (2012).

# C

## Defendant's Voluntarily Absence from Trial

Next, defendant argues that the trial justice was constitutionally required to appoint counsel—at least on a standby basis—to represent him after he absented himself from trial. Specifically, he argues that his lack of representation was "inimical to [his] rights to counsel, and due process of law" contained in the Sixth and Fourteenth Amendments to the United States Constitution, as well as article 1, section 10 of the Rhode Island Constitution.

As a first consideration, it is well settled that a defendant may waive his right to counsel. Faretta, 422 U.S. at 835 (holding that a defendant may "relinquish[] * * * the right to counsel" if he does so "knowingly and intelligently"). Additionally, it is well established that a defendant may waive his right to be present at trial. Illinois v. Allen, 397 U.S. 337, 342-43 (1970) (holding that the right to be present at trial "may be lost by consent or at times even by misconduct," quoting Snyder v. Massachusetts, 291 U.S. 97, 106 (1934)). However, the salient issue that is before this Court is whether the United States or Rhode Island Constitutions permit a defendant to waive both rights. We answer that question in the affirmative.

After defendant requested to absent himself from trial, the trial justice cautiously engaged in an extensive colloquy with defendant. The trial justice instructed him of all the rights that he was giving up by not being present at trial, and defendant indicated that he was insisting that he absent himself "knowingly, willingly and voluntarily." Therefore, it is clear to us that defendant's waiver of his right to be present at trial was made of his own free will. Indeed, defendant does not contend that his decision to absent himself was not voluntary. The fact that defendant voluntarily waived his right to be present at trial is a critical factor in our analysis,

because courts that have addressed the issue that is before us have distinguished between defendants' voluntary and involuntary absences.

In United States v. Mack, 362 F.3d 597, 600-03 (9th Cir. 2004), the United States Court of Appeals for the Ninth Circuit addressed the issue of whether a defendant must be appointed representation after he is involuntarily removed from the courtroom. The defendant in that case dismissed three attorneys before electing to represent himself. Id. at 599. He refused to have standby counsel appointed unless he could choose a person who was not on the court's standard appointment list; consequently, "standby counsel was not appointed." Id. At trial, the defendant acted in an "obstreperous, contemptuous," and threatening manner, and, as a result, he "was taken from the courtroom, questioning of witnesses ceased, and [he] was precluded from presenting closing argument to the jury." Id. After he was convicted, the defendant appealed, and the Ninth Circuit reversed the conviction. Mack, 362 F.3d at 599, 603. The court held that a

> "trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. Of course, a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." Id. at 601 (quoting Faretta, 422 U.S. at 834-35 n.46).

The court then explained that "[a] defendant does not forfeit his right to representation at trial when he acts out. He merely forfeits his right to represent himself in the proceeding." Id. at 601. The court further observed that, "[i]n practical effect, he had been removed as his own counsel and nobody stepped in to fill the gap. While we do understand that the district court had to do something about [the defendant's] obnoxious behavior, effectively leaving him without representation was still far from appropriate." Id.

Likewise in <u>Davis v. Grant</u>, 532 F.3d 132, 139-40 (2d Cir. 2008), <u>cert.</u> <u>denied</u>, 555 U.S. 1176 (2009), the United States Court of Appeals for the Second Circuit indicated that appointment of counsel might be required during a <u>pro</u> <u>se</u> defendant's involuntary absence from trial. In <u>Davis</u>, 532 F.3d at 137, the defendant was involuntarily removed from the courtroom after a series of outbursts, and his standby counsel or "legal advisor" was directed "to leave the defense table and to sit in the first row of the public seating area." In the defendant's absence, three of the state's witnesses testified, none of whom were subjected to cross-examination. <u>Id.</u> The defendant then rejoined the trial and participated in the proceeding to its conclusion. <u>Id.</u> After his conviction in state court was affirmed, the defendant filed a petition for a writ of habeas corpus in federal court, alleging "that his Sixth Amendment rights were violated when he was removed from the courtroom during prosecution witness testimony with no standby counsel appointed to represent him in his absence." <u>Id.</u> at 138. The United States District Court for the Southern District of New York dismissed the defendant's petition. <u>Id.</u> at 139.

On appeal from that dismissal, the Second Circuit—constrained by the limited scope of habeas review—affirmed, holding that "we cannot conclude that the state court decisions were unreasonable applications of [United States] Supreme Court precedent * * *." <u>Davis</u>, 532 F.3d at 140. Nevertheless, the court went on to observe that, had it been considering the issue <u>de</u> <u>novo</u>, it "might * * * conclude that the trial court was constitutionally required to appoint standby counsel for [the defendant] during his involuntary absence from the courtroom * * *." <u>Id.</u> at 139-40. Several other courts have also reached this conclusion. <u>See</u>, <u>e.g.</u>, <u>People v. Carroll</u>, 189 Cal.Rptr. 327, 331 (Cal. Ct. App. 1983); <u>Jones v. State</u>, 449 So.2d 253, 257 (Fla. 1984); <u>Saunders v. State</u>, 721 S.W.2d 359, 363 (Tex. Ct. App. 1986).

On the other hand, when a pro se defendant absents himself from his trial of his own volition, courts are almost uniform in holding that a trial judge is not constitutionally required to appoint counsel to represent the absent defendant. In Clark v. Perez, 510 F.3d 382 (2d Cir.), cert. denied, 555 U.S. 823 (2008), the defendant, elected to represent herself and, "in an act of political protest, [she] and her co-defendants absented themselves from the courtroom through nearly all of the pre-trial proceedings and the trial itself, listening to the proceedings through a speaker in their holding cells." Id. at 385. Although the defendant had legal advisors, "the defense table was empty throughout the prosecution's case and no objections were interposed by the defense." Id. at 387. More than two decades after she was convicted, the defendant successfully petitioned for habeas relief in federal district court. Id. at 388-89. "The district court held that the state trial court violated [the defendant's] Sixth Amendment rights * * * by allowing the trial to continue without revoking [the defendant's] pro se status (or appointing standby counsel) after [the defendant] refused to participate in or attend her trial." Id. at 396. The state appealed from the district court's decision to grant the defendant's habeas petition. Id. at 385.

In its de novo review, a unanimous panel of the Second Circuit reversed. Clark, 510 F.3d at 389-90, 397. The court began its analysis by noting that, because "[t]he right to self-representation may tend to run at cross-purposes to the right to effective assistance of counsel," the court would "exercise caution when called upon to establish per se rules that might overprotect either of these rights." Id. at 395. The court held that "there was no constitutional violation because [the defendant] knowingly and intelligently waived her right to counsel, unequivocally asserted her right to self-representation, made a conscious strategic choice to waive her right to be present in the courtroom as part of a de facto political protest defense, and

was afforded the opportunity to return whenever she chose." Id. at 396. The court stressed "the sanctity of freedom of choice," id. at 397 (quoting Torres v. United States, 140 F.3d 392, 402 (2d Cir.), cert. denied, 525 U.S. 1042 (1998)), from which the right to self-representation stems:

> "[The defendant] complains that the judge conducted the trial in a manner that violated her constitutional rights. It was, however, her choice to conduct her trial in that manner, and she made the choice in part to achieve what she perceived as tactical advantages, rejecting the trial judge's warnings of the risks involved. If she faced trial without advantages guaranteed by the Sixth Amendment, that was not by the trial judge's imposition, but by her own informed choice, which the trial judge was bound to respect. Her claim of violation of her constitutional rights has no merit whatsoever." Clark, 510 F.3d at 397.

Other courts that have addressed this issue have agreed. See, e.g., Torres, 140 F.3d at 401, 402, 403 (finding no error when the trial court failed to appoint an attorney to represent a pro se defendant who had voluntarily absented herself from the proceedings in order to conduct a political protest defense because "the district court properly respected [the defendant's] decision and her right to choose that course"); People v. Parento, 1 Cal.Rptr.2d 444, 446 (Cal. Ct. App. 1991) (holding that "a defendant who has exercised his right of self-representation by absenting himself from the proceedings, may not later claim error resulting from that exercise"); People v. Brante, 232 P.3d 204, 208-09 (Colo. App. 2009) ("[T]he trial court did not violate the defendant's Sixth Amendment right to counsel by declining sua sponte to appoint advisory counsel to take over the defense in his [voluntary] absence."); State v. Worthy, 583 N.W.2d 270, 279 (Minn. 1998) (holding that the trial court did not err "when it failed to reappoint [the defendants'] dismissed attorneys after they voluntarily absented themselves from trial," because the defendants "were unquestionably afforded their rights to counsel and to be present, and then voluntarily, knowingly, and intelligently waived those rights"). Although neither this Court, nor the United States Supreme Court has addressed the issue of whether a voluntarily-absent, pro se

- 24 -

defendant must have counsel appointed to represent him, we consider the above-mentioned cases to be persuasive.

Here, defendant voluntarily chose not to attend his trial, and, as such, we do not believe that the trial justice was required to appoint counsel to represent him. The voluntary nature of defendant's absence from trial is significant because it was defendant's free and informed choice that led to the result about which he now complains. As the United States Supreme Court has recognized, "whatever else may be said of those who wrote the Bill of Rights, surely there can be no doubt that they understood the inestimable worth of free choice." Faretta, 422 U.S. at 833-34. Here, defendant was thoroughly advised of the rights that he was surrendering by opting not to be present in the courtroom during his trial, yet he chose to do so anyway. Thus, like the defendant in Clark, Mr. Eddy

> "complains that the judge conducted the trial in a manner that violated [his] constitutional rights. It was, however, [his] choice to conduct [his] trial in that manner, * * * rejecting the trial judge's warnings of the risks involved. If [he] faced trial without advantages guaranteed by the Sixth Amendment, that was not by the trial judge's imposition, but by [his] own informed choice, which the trial judge was bound to respect." Clark, 510 F.3d at 397.

Thus, in our view, defendant "is in a similar position to a young man who murders his parents and then seeks the sympathy of the court because he is an orphan." Thomas v. Carroll, 581 F.3d 118, 124 n.3 (3d Cir. 2009), cert. denied, 130 S. Ct. 3462 (2010).

The defendant cites Thomas, 581 F.3d at 126-27, in which the Third Circuit indicated in dicta that a trial judge might be constitutionally required to appoint counsel to represent a voluntarily-absent pro se defendant. However, we do not find the dicta in that case to be convincing. In Thomas, as in the matter that is before us, a pro se defendant voluntarily absented himself from his trial. Id. at 121-22. The defendant was convicted, and his conviction was

affirmed by the Delaware Supreme Court. Id. at 122. After the defendant unsuccessfully sought habeas relief in the United States District Court for the District of Delaware, he appealed the denial of his habeas petition to the Third Circuit. Id. at 123. Operating within the bounds of its limited scope of review in habeas cases, the Third Circuit affirmed the conviction, concluding that the Delaware Supreme Court's decision was not "contrary to, or an unreasonable application of, clearly established federal law as determined by the [United States] Supreme Court." Id. at 127. Nevertheless, in dicta, the court expressed its concern with what it believed was "a complete breakdown of the adversarial process" that had occurred at the defendant's trial. Id. at 126. The court signaled that "[i]f this appeal had come before us on a direct appeal from a federal court presented with a defendant who waived his right to counsel and then absented himself from the courtroom, we might hold differently."[12] Id. at 127.

We are not moved by the language in Thomas for several reasons. First, the Third Circuit affirmed Thomas's conviction based on the narrow standard of review in habeas petition cases, and, therefore, its hypothetical de novo review of the constitutional issue before us constituted mere dicta, because "it had no bearing on the disposition of the case." McAninch v. State Department of Labor and Training, 64 A.3d 84, 90 (R.I. 2013); see also Black's Law Dictionary 1177 (9th ed. 2009) (defining "obiter dictum" as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential"). Second, Thomas is a bit of an outlier; indeed, it is the only case cited by defendant that suggests that either Constitution might require the appointment of counsel for a voluntarily-absent pro se defendant. We know of no other court that has addressed the issue and

---

[12] Moreover, in a concurring opinion in Thomas v. Carroll, 581 F.3d 118 (3d Cir. 2009), cert. denied, 130 S. Ct. 3462 (2010), Judge Pollak took this statement one step further, declaring that "[u]nder the hypothetical circumstances posited by the court, I not only might hold differently, I would hold differently." Id. at 127 (Pollak, J., concurring).

has employed a similar rationale. See, e.g., Clark, 510 F.3d at 396-97; Torres, 140 F.3d at 401-03; Parento, 1 Cal.Rptr.2d at 446; Brante, 232 P.3d at 208-09; Worthy, 583 N.W.2d at 279.

Finally, we agree with the logic of the courts that have confronted the issue, which have held that it is only when a defendant is involuntarily removed from the courtroom that the appointment of an attorney is required; when a defendant voluntarily does so, the appointment of counsel is not constitutionally required. Although the non-adversarial nature of a trial may be the same whether the pro se defendant's absence is voluntary or involuntary, the cause of the absence (and, by extension, the cause of the non-adversarial nature of the proceeding) differs. In the case of involuntary absence, the cause of the defendant's absence is the court-ordered removal of the pro se defendant, which carries with it the concomitant termination of the defendant's right of self-representation. See Mack, 362 F.3d at 601 (A defendant who acts out and is removed from the courtroom "forfeits his right to represent himself in the proceeding."). Conversely, in the case of voluntary absence by choice, the cause of the defendant's non-presence is the defendant's own decision to leave the courtroom, which carries with it no forfeiture of the right of self-representation. See Torres, 140 F.3d at 402 (describing the defendant's absence from trial as an "exercise [of] her right to defend herself"). Thus, when a defendant is involuntarily removed, the appointment of an attorney is required to "step[] in to fill the gap" left by the defendant's lack of representation after his right to self-representation is terminated. Mack, 362 F.3d at 601. However, when a defendant makes the decision to voluntarily absent himself, that decision constitutes an exercise of his self-representation. Certainly, the trial justice did not violate the Constitution when he declined to interfere with defendant's exercise of self-representation and allowed the trial to proceed without appointing counsel to take defendant's place. See Torres, 140 F.3d at 402 ("Just as [trial] courts should not

- 27 -

'compel a defendant to accept a lawyer [he] does not want,' * * * they should not interfere with the defendant's chosen method of defense." quoting Faretta, 422 U.S. at 833).[13]

Undeniably, a pro se defendant may choose to sit silently at the defense table during trial, give no opening statement or closing argument, call and cross-examine no witnesses, and make no objections. Parento, 1 Cal.Rptr.2d at 446. We see little difference between the defendant who quietly remains in the courtroom and the defendant who instead absents himself from the proceedings. As the California First District Court of Appeals has said, "[t]he issue is not physical presence, but choice." Id.

Finally, defendant contends that his purported right to have counsel appointed in his absence is derived, at least in part, from the Due Process Clause of the Fourteenth Amendment. However, the trial justice provided defendant with three competent and experienced attorneys, all of whom he found to be wanting and whom he ultimately discharged. The defendant delayed the proceedings an inordinate number of times, in what the trial justice correctly described as the tail attempting to wag the dog. The record clearly demonstrates that throughout the proceedings, the trial justice exercised great patience with defendant, and, indeed, he "bent over backwards" to accommodate him on numerous occasions. Furthermore, on several occasions during the course

---

[13] It is not lost upon us that defendant's position on appeal is a 180-degree reversal from the position that he took on numerous occasions throughout the proceedings below when he strenuously insisted that he be permitted to represent himself. In a motion to discharge one of defendant's attorneys, he reaffirmed to the court "his repeated wish to act as his own counsel," that he did "not wish for co-counsel," that he "[could not] have forced upon him any [a]ttorney against [his] wishes," that he "demand[ed] to exercise his right to act in a pro-se capacity," and that he "has never waivered [sic] from that wish." That previous position taken by defendant appears to be a more accurate reflection of the law than his argument on appeal. See Faretta v. California, 422 U.S. 806, 834 (1975) ("[A]lthough [a defendant] may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" quoting Illinois v. Allen, 397 U.S. 337, 350-51 (1970) (Brennan, J., concurring)); Clark v. Perez, 510 F.3d 382, 394 (2d Cir. 2008) ("The defendant's right to counsel does not generally empower courts to force counsel upon a criminal defendant.").

of the trial, the trial justice inquired as to whether defendant had any desire to resume participation in the proceedings, and defendant declined each time. Consequently, we are hard-pressed to discern what further process was due to defendant.

For the foregoing reasons, we hold that neither the United States Constitution, nor article 1, section 10 of the Rhode Island Constitution mandates that counsel be appointed when a pro se defendant voluntarily absents himself from his trial.

**D**

**Rule 43 of the Superior Court Rules of Criminal Procedure**

The defendant also argues that he "should not have been permitted to waive his presence at trial because he was charged with the Rhode Island equivalent of a capital crime." Specifically, he contends that Rule 43 of the Superior Court Rules of Criminal Procedure precluded the trial justice from allowing defendant to voluntarily absent himself from trial. Rule 43 provides that "[i]n prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in the defendant's presence shall not prevent continuing the trial to and including the return of the verdict." (Emphasis added.) The phrase "not punishable by death" is clear and unambiguous, and it is abundantly obvious that the offenses with which defendant was charged were not punishable by death. See § 11-37-3 ("Penalty for first degree sexual assault. – Every person who shall commit sexual assault in the first degree shall be imprisoned for a period not less than ten (10) years and may be imprisoned for life."); § 11-37-8.2, as amended by P.L. 2006, ch. 207, § 3 ("Penalty for first degree child molestation sexual assault. – Every person who shall commit first degree child molestation sexual assault shall be imprisoned for a period of not less than twenty-five (25) years and may be

imprisoned for life.").[14]  Therefore, we fail to see how Rule 43 presented any bar to defendant's trial continuing, even after he elected not to be present.[15]

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of conviction in this case.  The record shall be returned to the Superior Court.

---

[14] At all times relevant to this case, the penalty for first-degree child molestation sexual assault was imprisonment "for a period of not less than twenty (20) years," with the possibility of "imprison[ment] for life." Section 11-37-8.2, as enacted by P.L. 1984, ch. 59, § 2.  In 2006, after defendant was sentenced, the Legislature increased the minimum sentence for this crime to imprisonment "for a period of not less than twenty-five (25) years." P.L. 2006, ch. 207, § 3.  However, this fact has no bearing on our decision in this case.

[15] The defendant also argues that count 3 of the five-count indictment was tried in an improper venue, because that particular count was alleged to have taken place in Kent County, and the trial took place in the Providence County Superior Court.  Assuming, without deciding, that this argument has merit, any improper venue would, at most, constitute harmless error.  The defendant was convicted of the four other counts contained in the indictment, and for each, he received life sentences—two to run concurrently with count 3, and two to run concurrently with each other, but consecutively to the others.  Consequently, any error concerning only one count of the indictment would be harmless beyond a reasonable doubt.

Finally, defendant contends that the cumulative effect of the errors that he alleges requires that his judgment of conviction be vacated.  Because we hold that each of defendant's arguments lacks merit, there are no errors to cumulate.


**TITLE OF CASE:**     State v. John J. Eddy.

**CASE NO:**     No. 2007-236-C.A.
                    (P1/04-1286A)

**COURT:**     Supreme Court

**DATE OPINION FILED:**     June 26, 2013

**JUSTICES:**     Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**     Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**     Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Francis J. Darigan, Jr.

**ATTORNEYS ON APPEAL:**

For State:  Aaron L. Weisman
                Department of Attorney General

For Defendant:  John J. Eddy, Pro Se