[Crim. No. 41330. Second Dist., Div. Three. Feb. 23, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN WALTER CARROLL, Defendant and Appellant.

**COUNSEL**

Russell Iungerich, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DANIELSON, J.**—John Carroll has appealed his conviction of first degree murder (Pen. Code, § 187).

This is a case in which defendant exercised his right to represent himself at trial and, during the People's case, was, from time to time, excluded from the courtroom by court order for conduct which the court considered unacceptable. During these periods of exclusion, no defense counsel was present in the courtroom, and it does not appear that defendant had even such access to the proceedings as could have been provided by electronic means.

Proceeding with trial, under the circumstances of this case, in the total absence of defendant or counsel for the defense, was error. The kind of error which occurred in this case is so fundamental that it goes to the essence of a fair trial. Accordingly, we must reverse and remand for a new trial.

### FACTS

Defendant had been living for about six months in an apartment in Long Beach with victim and her two children aged 10 and 11 years. On August 10, 1980, a Sunday, an argument began between defendant and victim. Defendant began to hit her, and the two went into the bedroom. The children could hear an altercation taking place in the bedroom between defendant and the victim, which continued into the night, and the next day. When the children returned from summer school the next day, the bedroom door was closed, and defendant would not let them go in. Defendant left the apartment, taking the children with him, and left them at someone's house. Walter Carroll, defendant's cousin, testified that on Monday, August 11, 1980, he took defendant to the airport, where he caught a plane to Little Rock, Arkansas, before midnight.

On August 14, when the children and a neighbor saw victim's body in the apartment through a window, the police were called. The police officers found victim's body on the bedroom floor. She was determined to have died of multiple injuries which could not have been self-inflicted. No drugs or narcotics were found in her body.

Defendant's cellmate from March of 1981 testified that defendant had told him that victim "was just a slut" and that he "had to kill her."

### THE TRIAL

The public defender was appointed to represent defendant on March 24, 1981.

On May 14, 1981, defendant's motion to relieve the public defender and appoint private counsel was made and denied. Defendant then said that he pre-

ferred to represent himself rather than have the public defender as counsel. The judge extensively questioned him about this. Defendant said that he had a high school equivalency certificate and a welding certificate, had been employed as a truck driver and a welder, and had once sat through a criminal jury trial.

The court advised him that an experienced public defender would be appointed and recommended that he not represent himself. The court also told him that he was making a mistake, and that he was being granted pro. per. status with great reluctance. A written form detailing the problems with waiving counsel was read to defendant, and he was questioned about it in open court.

Defendant was also told that he could change his mind "in the near future; that is, within a week," and accept appointed counsel, but that if he changed his mind on the day of trial or during trial, the court would not delay the proceedings to appoint counsel.

On September 14, 1981, when the case was called for motions and trial, defendant moved, on the basis of a written motion he had filed, for appointment of cocounsel, and the court informed him that he had a right to appointed counsel, but not to cocounsel. Defendant also moved again orally to appoint a private attorney, but not the public defender, with the allegation that the public defender had represented the victim and a confidential informant before. The court denied defendant's motion for appointment of cocounsel and ruled that because it was made one day before trial, defendant's request for appointment of counsel was made too late.

On September 15, 1981, defendant told the judge that he wanted counsel appointed because he was incompetent to represent himself. He also requested a continuance. The court denied defendant's request for a continuance because it was his fifth continuance; defendant had failed to make diligent use of his appointed investigator; and the victim's two children had already been flown in from New York as witnesses. The court then denied the motion for appointed counsel on the ground that the motion was untimely and had been made for purposes of further delay when all other methods of delay had failed.

Jury selection then began.

The record of September 15, 1981, reflects that defendant was not present for all of the jury selection. The minute order states that defendant was removed "at his own request and with the court's order in that the defendant continues to disrupt the proceedings."

The record reflects that on the morning of September 16, 1981, while defendant was still absent, the court appointed an attorney solely to advise defendant

about jury voir dire and to urge him to attend the trial. That attorney performed that function, but did not appear again in this proceeding.

Defendant returned to court for part of the jury selection. Out of the presence of the jury, the court advised defendant that he would not be forced to attend the trial. Defendant said that he had never intended to waive his right to appointed counsel and again stated that he requested to be represented by a lawyer. He was physically removed from the courtroom, later that morning, while jury selection continued. The trial court said that he had been removed for "disrupting the jury."

Defendant was brought back to the courtroom after the jury had been sworn.

The court advised defendant as follows: "As indicated, you are entitled to represent yourself throughout the course of trial, should you desire. If you start making statements, disrupting the trial, the court will have to have you removed. The court will not physically force you to stay in trial. The court will physically remove [sic], though, if you disrupt the course of the trial."

Defendant maintained that he had been trying to tell the court that he was not competent to represent himself when he had been removed.

Also on the morning of September 16, 1981, when defendant was given the opportunity to make an opening statement, he again stated that he was not competent to represent himself, and the court told him that he would be removed unless he confined his statement to the evidence. Defendant did not so confine his statement and was again removed from the courtroom.[1]

---

[1]The following colloquy took place:
"THE COURT: Mr.Carroll, you have the opportunity to make an opening statement, which would mean what you would expect any witnesses to testify to. [¶] THE DEFENDANT: Your Honor, I would try. I will attempt. First of all, I would like for the jury to know that I am not competent to represent myself. My motion to relieve myself as counsel was timely made. [¶] THE COURT: All right. Mr. Carroll, we are going to have to remove you from the courtroom. You have the opportunity to make an opening statement. But you cannot tell the jury something that is irrelevant and does not relate to the evidence. [¶] THE DEFENDANT: May the record reflect that the defendant is being physically removed from the courtroom. [¶] THE COURT: You will not be physically removed, if you wish to make a proper opening statement to the jury. But you are not going to make a statement on something that is completely irrelevant to the charge. [¶] THE DEFENDANT: May the record reflect that the defendant has been excused by the judge. THE COURT: Not necessarily. The court says you can make an opening statement. But you only make an opening statement as to the evidence. You do not make it on the basis of something that's irrelevant to the charge. If you start again to read something that's irrelevant, the court will have to remove you. Because this trial has to proceed. You used every possible means to delay the trial. You still are doing so. Now, if you wish to make an opening statement, that you may. But if you start making a statement, something that's not relevant to the charge, then, in that event, the court will have to have you physically removed. [¶] THE DEFENDANT: Your Honor, I would like for the jury to know that the defendant was never served any papers as to what time this person died. A date or anything of this. [¶] THE COURT: Would you please

For the remainder of the morning of September 16, 1981, Dr. Sharon I. Schnittker, deputy medical examiner, testified to her findings as to the cause of victim's death, with defendant absent. At the beginning of the afternoon session, defendant was brought back into the courtroom. Out of the presence of the jury, the court again advised defendant that he had a right to be present. Dr. Schnittker testified further, and when defendant was offered an opportunity to question her, defendant again announced that he wanted a court-appointed attorney and was removed.[2]

In defendant's absence, the neighbor who had discovered the corpse testified that defendant had lived in the apartment; he described the discovery of the body. He was not cross-examined, because defendant was still out of the courtroom.

Defendant was also absent while the victim's son testified, but defendant was brought into the courtroom so that the son could identify him. While defendant was in the courtroom, the court asked him whether he wanted to cross-examine the witness. Defendant declined on the ground that he was not competent to represent himself. He also declined, on that ground, to cross-examine the victim's daughter, even though he had returned to the courtroom for her testimony.

For the remainder of the trial, defendant remained in the courtroom and cross-examined the other witnesses, including the police officer who was called to the scene, a police criminalist, a police homicide detail officer, and defendant's former cellmate. During cross-examination of these witnesses, defendant said that he was incompetent to represent himself and had asked for counsel or cocounsel to be appointed.

Defendant moved during the defense case to have another inmate of the county jail appointed as cocounsel, and this motion was denied, outside the presence of the jury.

As part of defendant's case, he moved to call the trial judge as a witness, but that motion was denied after a hearing before another judge. Defendant called

---

remove the defendant. [¶] THE DEFENDANT: And I wasn't even in town at the time. I was out of town. And I don't know anything about it. May the record reflect that defendant is being physically removed from the courtroom. [¶] THE COURT: The record will so indicate, with pleasure."

[2]The record reflects the following colloquy: "THE DEFENDANT: Due to my lack of understanding of legal terms, I was not aware—I was not asked to give up my pro per status to be fully represented by court-appointed attorney and—[¶] THE COURT: Mr. Carroll, the court will have to remove you if—[¶] THE DEFENDANT: I was not allowed to—[¶] THE COURT: Please remove Mr. Carroll. [¶] THE DEFENDANT: May the record reflect that the defendant is being physically removed from the court. [¶] THE COURT: The record will so reflect."

jail inmates to the stand in an attempt to elicit testimony that he had never told these witnesses that he had committed the crime. He called various prosecution witnesses, including Dr. Schnittker, the medical examiner. He also called the police criminalist, the homicide officer, and Walter Carroll. Defendant made his argument before the jury, and the jury returned its verdict of guilty. On October 16, 1981, defendant's motion to have counsel appointed for the sentencing hearing was denied.

### Discussion

In this case, excluding defendant from the courtroom meant that certain parts of the People's case proceeded without the presence of the defendant, or counsel for the defense. Such a situation offends the most fundamental idea of due process of law, as defendant is totally deprived of presence at trial and even of knowledge of what has taken place. Because defendant represented himself, his removal from the courtroom deprived him not only of his own presence, but of legal representation.

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process. Mr. Justice Black, writing for the Court in *In re Oliver,* 33 U.S. 257, 273 (1948), identified these rights as among the minimum essentials of a fair trial: 'A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.' " (*Chambers* v. *Mississippi* (1973) 410 U.S. 284, 294 [35 L.Ed.2d 297, 308, 93 S.Ct. 1038].)

The right to counsel at trial is such that its absolute denial cannot be deemed harmless error. In *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733], there was no consideration of whether denial of appointed counsel to an indigent felony defendant had been prejudicial to defendant's case, only a holding that such denial required reversal.

It has also been held that the right to assistance of counsel is one of the rights of due process which are necessary to insure the fundamental human rights to life and liberty. If this safeguard is not provided, justice cannot be done. The state is without the power and authority to deprive an accused of life and liberty unless he has or waives assistance of counsel, and provision of the right to counsel, or waiver thereof, is an essential jurisdictional prerequisite to the authority to convict an accused. Conviction without this safeguard is void. (*Johnson* v. *Zerbst* (1938) 304 U.S. 458 [82 L.Ed. 1461, 58 S.Ct. 1019].)

In *Chapman* v. *California* (1967) 386 U.S. 18, 23, footnote 8 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065], the Supreme Court noted that denial of the constitutional right to counsel can never be deemed harmless error but, rather, requires reversal of the conviction. (See *People* v. *Holland* (1978) 23 Cal.3d 77, 87 [151 Cal.Rptr. 625, 588 P.2d 765].)

In *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], the United States Supreme Court held that the right to assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the federal Constitution includes the right of an accused to represent himself at trial when he voluntarily and intelligently elects to do so. The refusal of the California trial court to permit Mr. Faretta to represent himself at trial was held to require vacation of the judgment, without regard to whether defendant had been prejudiced in the outcome of the trial.

From the above cases, we must conclude that, under the circumstances of our case, the involuntary exclusion from the courtroom of a defendant who was representing himself, without other defense counsel present, was fundamental error requiring reversal without regard to prejudice.

We do not intend, with this opinion, to put into the hands of defendants a tool by which they can exercise their rights under *Faretta* v. *California, supra,* 422 U.S. 806, to represent themselves and then become disruptive, securing their exclusion from the courtroom and automatic reversal. Other alternatives exist. The trial court may, for example, find that defendant is no longer able to represent himself and appoint counsel. It has been suggested that contempt proceedings may be taken against a defendant in a proper case, or that a defendant may remain in the courtroom under some restraint. (See *Illinois* v. *Allen* (1970) 397 U.S. 337, 344 [25 L.Ed.2d 353, 359, 90 S.Ct. 1057].) In the present case, no alternative other than excluding defendant was attempted.[3]

In *Faretta, supra,* the court made these comments, in a footnote, upon the possible problems with the right to self-representation which it had announced that day: "We are told that many criminal defendants representing themselves may use the courtroom for deliberate disruption of their trials. But the right of self-representation has been recognized from our beginnings by federal law and by most of the States, and no such result has thereby occurred. Moreover, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. See *Illinois* v. *Allen,* 397 U.S. 337. Of course, a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests

---

[3]In *People* v. *McKenzie,* Crim. No. 22615, a related issue is currently pending before this state's Supreme Court.

help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary. See *United States* v. *Dougherty,* 154 U.S. App.D.C. 76, 87-89, 473 F.2d 1113, 1124-1126.

■ "The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law. Thus, whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" (*Faretta* v. *California, supra,* 422 U.S. 806, 834-835, fn. 46 [45 L.Ed.2d 562, 581].)

■ We do not base our holding in this case on error by the trial court in deciding that this defendant's behavior merited his exclusion from the courtroom.

A defendant who is represented by counsel may be excluded from the courtroom for disorderly or disruptive behavior, or, in a trial for an offense not punishable by death, the trial may continue if defendant is voluntarily absent. (See Pen. Code, § 1043.)[4]

It has been held that a defendant may waive his constitutional right to confront witnesses by disruptive conduct in the courtroom. (See *Illinois* v. *Allen, supra,* 397 U.S. 337; *People* v. *Booker* (1977) 69 Cal.App.3d 654 [138 Cal.Rptr. 347].) However, these cases have involved defendants who exhibited violently disruptive conduct and who continued to have defense counsel present while they were excluded from the courtroom.

In the present case, defendant does not appear to have engaged in violent conduct. Although his repeated statements that he was incompetent to represent himself were, undoubtedly, annoying, provocative, and somewhat disruptive, there is no indication that it was impossible to proceed with the trial as a result. It was error to exclude defendant under the circumstances.

---

[4]Penal Code section 1043 provides, in pertinent part, as follows: "(a) Except as otherwise provided in this section, the defendant in a felony case shall be personally present at the trial.

"(b) The absence of the defendant in a felony case after the trial has commenced in his presence shall not prevent continuing the trial to, and including, the return of the verdict in any of the following cases:

"(1) Any case in which the defendant, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that the trial cannot be carried on with him in the courtroom.

"(2) Any prosecution for an offense which is not punishable by death in which the defendant is voluntarily absent.

"(c) Any defendant who is absent from trial pursuant to paragraph (1) of subdivision (b) may reclaim his right to be present at the trial as soon as he is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings."

If defendant Carroll had not been acting as his own counsel, we would, nevertheless, find that the error in excluding him was harmless beyond a reasonble doubt, given the overwhelming case against him. (See *Chapman* v. *California, supra,* 386 U.S. 18.) However, as we have previously discussed, excluding him as a defendant representing himself was a fundamental error requiring reversal, because there was, then, no defense counsel present.

Nor do we base our decision in this case on error in denying defendant's belated request for appointed counsel. ■ Once a defendant has proceeded to trial representing himself, it is within the sound discretion of the trial court whether he may later give up the right to self-representation and assert the right to appointment of counsel. *People* v. *Elliott* (1977) 70 Cal.App.3d 984, 991 [139 Cal.Rptr. 205].

Relevant facts in considering whether defendant should be allowed to assert the right to counsel after trial has begun include the following: "(1) Defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney." (*Id.* at p. 993.) The trial court must make a record based on these factors and then exercise its discretion and rule on defendant's request. (*Id.* at p. 994.) ■ However, we also do not base our reversal on any error in making a record as to this aspect of the case.

Any error related to denial of the belated request for counsel would have been found harmless beyond a reasonable doubt. (See *Chapman* v. *California, supra,* 386 U.S. 18.)

We base our holding on the fundamental error in the present case in excluding a defendant acting as his own counsel from the courtroom without the presence of counsel for the defense, where, as here, defendant's annoying activity amounted to no more than a repeated insistence on appointment of counsel.

Our holding today does not extend to cases where defendant clearly chooses to represent himself and then clearly, voluntarily, and on the record, refuses to participate in his trial. We limit our holding to only those situations in which a defendant has chosen to represent himself and then is removed from the courtroom, involuntarily, while the trial continues in his absence, without counsel present.

## DISPOSITION

The judgment is reversed, and the case is remanded for retrial.

Klein, P. J., and Lui, J., concurred.

A petition for a rehearing was denied March 21, 1983, and respondent's petition for a hearing by the Supreme Court was denied April 20, 1983.