Filed 1/28/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039219 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC954850) |
| v. | |
| ZEFERINO ESPINOZA, JR., | |
| Defendant and Appellant. | |

This case concerns the constitutionality of a trial held without the presence of the defendant or defense counsel. Several attorneys from the public defender's office had represented defendant Zeferino Espinoza Jr. in lengthy pretrial proceedings as he repeatedly moved for dismissal of counsel under *Marsden*.[1] In the week before trial, the court denied several motions by defendant to dismiss counsel again—this time, under both *Marsden* and *Faretta*.[2] The court also refused to grant a continuance, and the case went to trial. Then, in the middle of jury selection, the court granted defendant's *Faretta* motion, denied his motion for a one-day continuance, and dismissed the public defender.

Defendant proceeded with the trial in pro per, but on the second day of the evidentiary phase, he failed to appear. After trying unsuccessfully to locate defendant, the court proceeded with the trial in defendant's absence and without appointing defense counsel.

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

[2] *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

The jury found defendant guilty on six counts:  Two counts of possession of a firearm by a felon; possession of morphine; possession of marijuana; possession of ammunition by a felon; and possession of diazepam without a prescription.  The jury acquitted defendant on two counts:  Making criminal threats, and attempting to dissuade a witness by use or threat of force.  The trial court sentenced defendant to an aggregate term of two years eight months.

On appeal, defendant contends:  (1) the trial court erred by trying him in abstentia without appointing counsel; (2) his conviction for possession of marijuana must be reduced to an infraction; (3) the trial court erred by sentencing him to one year in county jail for possession of marijuana; (4) the trial court erred in denying his motion for discovery under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*); and (5) the trial court erred by denying his motion for a one-day continuance.[3]

We hold the trial court erred by proceeding with trial in the absence of defendant and defense counsel because defendant did not knowingly waive several fundamental trial rights.  We hold that this error was structural, requiring automatic reversal.[4]  We further conclude the trial court erred in denying defendant's motion for a one-day continuance after granting his *Faretta* motion—a separate ground for reversal.  Finally, we conclude defendant's *Pitchess* claim is without merit.  We will reverse the judgment of conviction.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts of the Offenses*

Defendant lived with his roommate, Augustine Gonzales, Jr., and one other person in a four-bedroom house in San José.  On September 3, 2009, Gonzales arrived home to

---

[3] Defendant raised this last claim after we requested supplemental briefing on the matter.

[4] Because reversal is required, we do not reach defendant's claims of sentencing error.

find defendant had changed the lock on the front door. The new lock was poorly installed, and Gonzales was able to enter the house. Gonzales found defendant in the kitchen, and the two began arguing angrily. When Gonzales threatened to call the police, defendant threatened to kill him. Undeterred, Gonzales called the police to complain. He told the dispatcher that defendant possessed a firearm. On the dispatcher's instructions, Gonzales left the house while police were dispatched. Defendant followed him out of the house and continued to make threats.

At trial, several police officers testified that upon their arrival they found both defendant and Gonzales in the street outside the house. The police handcuffed defendant and requested consent to search his bedroom. Defendant consented to the search[5] and told police which bedroom in the house was his. Defendant also alerted them to the presence of a shotgun and a handgun in the house. In searching defendant's bedroom area, police found an unloaded 12-gauge shotgun in the closet, a loaded .25-caliber pistol under the mattress, a box of ammunition for a .38-caliber revolver, three containers of marijuana, and prescription medications including 11 morphine pills, 4 diazepam pills, and 28 lorazepam pills.

In a bifurcated portion of the trial, the prosecution presented evidence of defendant's prior felony convictions for false personation (Pen. Code, § 529) and infliction of corporal injury resulting in a traumatic condition on a spouse or cohabitant (Pen. Code, § 273.5).

B. *Procedural Background*

In December 2009, the prosecution charged defendant by information with eight counts: Count One—possession of a firearm by a felon (former Pen. Code, § 12021,

---

[5] At a hearing on his motion to suppress, defendant testified that he never consented to the search. He denied telling the police which bedroom was his and denied telling them there were guns in the house. The trial court denied the motion. Defendant does not raise this issue on appeal.

subd. (a)(1), repealed and reenacted as Pen. Code, § 29800, subd. (a)(1) [Stats. 2010, c. 711, § 6]; Count Two—possession of morphine (Health & Saf. Code, § 11350, subd. (a)); Count Three—criminal threats (Pen. Code, § 422); Count Four—possession of marijuana (Health & Saf. Code, § 11357, subd. (b)); Count Five—possession of ammunition by a felon (former Pen. Code, § 12316, subd. (b)(1), repealed and reenacted as Pen. Code, § 30305, subd. (a)(1) [Stats. 2010, c. 711, § 6]); Count Six—attempting to dissuade a witness by use or threat of force (Pen. Code, § 136.1, subd. (c)(1)); Count Seven—possession of a firearm by a felon (former Pen. Code, § 12021, subd. (a)(1)); and Count Eight—possession of diazepam without a prescription (Health & Saf. Code, § 11375, subd. (b)(2)).

After numerous lengthy delays, jury selection began April 23, 2012. The evidentiary phase of the trial began the next day. The court bifurcated the trial to separate the evidence of defendant's past felony convictions. In the first part of the trial, with respect to Counts One, Five, and Seven, the jury was told only that defendant was not allowed to possess firearms or ammunition. After the jury rendered its verdict on this basis, the prosecution introduced uncontested evidence of defendant's past felonies in the second part of the trial. On April 30, the jury acquitted defendant on Counts Three and Six, but found him guilty on all other counts.

The trial court sentenced defendant to an aggregate term of two years eight months as follows: two years on Count One; eight months on Count Two, consecutive to the two-year term on Count One; two years each on Counts Five and Seven, concurrent with the two-year term on Count One; and 365 days in county jail on each of Counts Four and Eight, concurrent with the two-year term.

## II. DISCUSSION

A. *Trial in Abstentia*

Defendant argues that, by proceeding in his absence and without appointing counsel, the trial court violated his constitutional rights to due process, to be present at

4

trial, to present a defense, and to confront witnesses against him. The Attorney General contends defendant voluntarily absented himself for the purpose of delaying or obstructing proceedings and thereby waived his trial rights.

1. *Background*

The pretrial proceedings lasted more than two years, during which defendant made several motions to relieve appointed counsel under *Marsden*. Seven different public defenders represented defendant in 65 appearances on his behalf. The trial court found this to be a product of defendant's delay tactics and "manipulations of the process."

In March 2012, Mark Camperi from the public defender's office represented defendant. Defendant moved under *Marsden* to relieve Camperi, but after a closed hearing, the court denied the motion. On April 17, 2012, six days before trial, defendant again moved to relieve Camperi, but this time under *Faretta*. Defendant requested, among other things, "a conflict of interest attorney to help me handle my case." The court held another closed hearing and asked defendant when he would be ready for trial. Defendant requested a continuance of "a little bit more than three weeks or so just to see where I'm at." The trial court denied the *Faretta* motion on the ground that defendant was not prepared to represent himself in a timely fashion. The court also found that "sometimes people use the *Faretta* as a tool to manipulate the court system, which appears to be happening. If you truly wanted to represent yourself you could have brought that motion any time in the last few years in this case and then you would have been ready for trial."

Defendant then once again moved to relieve Camperi under *Marsden*. Defendant claimed Camperi had a conflict of interest, that Camperi had threatened him, that Camperi did not care about the case, that Camperi had failed to investigate certain witnesses, and that Camperi would not communicate with him. Camperi denied these allegations. The court found no basis for the motion and denied it again.

5

The next day, defendant renewed his *Faretta* motion and requested a continuance of two weeks to prepare for trial. The court denied the *Faretta* motion on the ground that defendant could not be ready for trial in two weeks.

On April 23, 2012, just before jury selection, defendant again renewed his *Marsden* and *Faretta* motions to relieve Camperi. In another closed hearing, defendant reiterated his complaints and again expressed his inability to communicate with Camperi. Camperi informed the court that he found it difficult to communicate with defendant, but that defendant could still assist him adequately. The court denied the motions on the ground that defendant would not be satisfied with any appointed attorney, and that defendant was not prepared to try the case himself. The court found defendant to be engaged in delay tactics and "trying to game the system." The court then reopened the courtroom and began jury selection.

The next day, in the middle of jury selection, defendant renewed his *Marsden* and *Faretta* motions and the court held another closed hearing. Defendant complained again that he could not communicate with Camperi and lodged various allegations of misconduct against him. The court found defendant's allegations to be untrue and admonished him for lying to the court. The court again denied the *Marsden* motion on the ground that defendant was "playing the system." Defendant then moved once again under *Faretta* to represent himself and requested cocounsel to assist him.

At this point, the court granted defendant's *Faretta* motion on the condition that defendant proceed immediately. The court admonished defendant on the perils of proceeding pro se and warned him that he would receive neither special consideration nor cocounsel. Defendant read and signed a form advising him of his various trial rights, including the right to confront opposing witnesses, the right to present a defense, and the right to counsel.

The form required defendant to acknowledge that he was waiving the right to appointed counsel. The form also required him to acknowledge that "the right to act in

6

propria persona is not a license to abuse the dignity of the Court." And the form included the statement: "I understand that the Court may terminate my right to self-representation in the event that I engage in serious misconduct and obstruct the conduct and progress of trial. I understand that if at some point an appointed attorney does have to take over my case, that attorney may be at a great disadvantage in presenting my case."

The court reviewed the form with defendant in open court and answered his questions about it. The court further admonished defendant that "Mr. Camperi is not going to be coming back. You are not going to get co-counsel, side counsel, assisted counsel or any kind of counsel." The court found that defendant voluntarily waived his right to counsel and added that "the defendant has been working the system as part of a delay tactic." Defendant requested a one-day continuance, but the court denied his request.

The court then relieved Camperi and resumed jury selection. The jury was sworn and instructed, and the prosecutor gave his opening statement. Defendant waived his opening statement. The prosecution then called Gonzales to testify. Defendant lodged two objections during the prosecution's direct examination, but he conducted no cross-examination.

The next morning, defendant failed to appear. The court and prosecutor immediately attempted to contact defendant, but they could not reach him. The court issued a body attachment order, but defendant could not be found. The court asked the prosecutor to contact anyone who might know defendant's location so that they could provide that information to the police and the court. The prosecutor contacted Camperi and Gonzales, but neither knew of defendant's whereabouts. The police sent a surveillance team to defendant's home and to two other addresses associated with him. The courtroom deputy left messages on defendant's phone and his father's phone. The deputy also contacted defendant's workplace. The clerk monitored the court's voicemail

to check for calls by defendant. All these efforts to find or contact defendant were unsuccessful.

The next day, the trial court found that defendant had voluntarily, knowingly, and purposefully absented himself from trial under Penal Code section 1043 and *People v. Connolly* (1973) 36 Cal.App.3d 379 (*Connolly*). The court further found that defendant "abandoned this trial purposefully and that the purpose for which he chose to not come to trial was evasion of the trial or avoiding penalty for the alleged crimes that he allegedly committed or another delay tactic with the defendant perhaps believing that if he didn't show up to trial that the court would terminate this jury trial, send the jurors home and then when he comes in in a month he would try to delay the trial again for another three years." The court also noted that defendant had been given a written copy of the rules of court informing him: "You must be in court every day at 8:45." The court found that defendant "read it, he highlighted it, he retained a copy of that so he knew he had to be here at 8:45."

The court proceeded with the trial in defendant's absence without appointing defense counsel. The prosecution presented testimony from four police officers and a criminalist from the county crime laboratory. The court also held hearings under Evidence Code section 402 to determine the admissibility of defendant's statements to police, which the court found admissible. At the close of evidence, the court instructed the jury: "During a portion of the trial, the defendant failed to appear for the court proceedings. Do not consider his absence for any purpose in your deliberations."

Before deliberations, the court instructed the jury: "Because the defendant was not present during part of the trial, you shall not attempt to fill in with non-existing evidence or advocate for the missing defendant simply because of his absence. Likewise, you shall not try to render verdicts that will satisfy the party who stayed through the trial, the People of the State of California, simply based upon the reason that the People stayed

through the trial or simply based upon the reason that the People will be the only party present at the announcement of your verdict."

In May 2012, almost a month after the end of the trial, defendant voluntarily reappeared in court with counsel, and the court remanded him into custody. The court denied defendant's motion to exonerate his $50,000 bail and found that he forfeited it by failing to appear. Defendant subsequently moved for a new trial on the ground, among others, that the trial court erred by proceeding with the trial in his absence. The court denied the motion on the ground that defendant "volitionally" chose not to appear for trial. The court found that defendant had been hiding at his girlfriend's house, at an address unknown to the prosecutor, the police, defense counsel, and the court. The court further found "ample evidence of delay tactics, unreasonable expectations, dishonest statements to the court, and manipulations of the process."

According to the probation report, defendant "stopped attending the Court proceedings because he was advised by an attorney to stop going so that there would be cause for a mistrial. The defendant does not understand how the proceedings continued without being present in Court and he would like this case to be considered a mistrial."

The prosecution subsequently charged defendant by felony complaint with failure to appear while released on bail. (Pen. Code, § 1320.5.) Defendant was convicted and sentenced to 90 days in county jail. This court affirmed defendant's conviction for failure to appear following review under *People v. Wende* (1979) 25 Cal.3d 436.[6]

2. *Legal Principles*

The federal Constitution guarantees criminal defendants several fundamental trial rights at issue here. "[T]he Confrontation Clause of the Sixth Amendment gives the accused a right to be present at all stages of the proceedings where fundamental fairness might be thwarted by his absence." (*Faretta*, *supra*, 422 U.S. at p. 816.) The right to be

---

[6] *People v. Espinoza* (Dec. 18, 2013, H039554) [nonpub. opn.].

present is also set forth in section 15 of article I of the California Constitution and by Penal Code section 1043. (*People v. Concepcion* (2008) 45 Cal.4th 77, 81 (*Concepcion*).) The Sixth Amendment provides the right to confront opposing witnesses and the right to effective assistance of counsel. (*Pointer v. Texas* (1965) 380 U.S. 400, 403; *Gideon v. Wainwright* (1963) 372 U.S. 335, 344; *McMann v. Richardson* (1970) 397 U.S. 759, 771.) Due process further requires " 'a meaningful opportunity to present a complete defense.' " (*Crane v. Kentucky* (1986) 476 U.S. 683, 690 [quoting *California v. Trombetta* (1984) 467 U.S. 479, 485].) This opportunity includes the right to call witnesses and the right to present argument. (*Chambers v. Mississippi* (1973) 410 U.S. 284, 302; *Herring v. New York* (1975) 422 U.S. 853, 858.)

    a. *Presence of the Defendant*

The right to be present is not absolute; a defendant may expressly or impliedly waive the right to be present. (*Concepcion*, *supra*, 45 Cal.4th at p. 82.) Consistent with the Sixth Amendment, a trial court may remove a defendant involuntarily for disrupting the trial proceedings. (*Illinois v. Allen* (1970) 397 U.S. 337, 344.) California law empowers the trial court to remove a defendant involuntarily and proceed with trial if the court warns the defendant he will be removed, but the defendant continues to disrupt the trial. (Pen. Code, § 1043, subd. (b)(1); *Concepcion*, *supra*, at p. 82.) However, a defendant who is absented involuntarily under Penal Code section 1043 "may reclaim his right to be present at the trial as soon as he is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." (Pen. Code, § 1043, subd. (c).)

A defendant in a non-capital case may also waive the right to be present by absenting himself from trial on his own volition, provided the waiver is knowing and voluntary. (*Taylor v. United States* (1973) 414 U.S. 17, 18 (*Taylor*); *Concepcion*, *supra*, 45 Cal.4th at p. 82; *Connolly*, *supra*, 36 Cal.App.3d at p. 384; Pen. Code, §1043, subd. (b)(2).) While the trial court is not required to advise defendant expressly that the

10

trial will continue in his absence, a knowing waiver requires that the defendant be aware of the proceedings taking place: " '[I]f a defendant at liberty remains away during his trial the court may proceed provided it is clearly established that his absence is voluntary. *He must be aware of the processes taking place*, of his right and of his obligation to be present, and he must have no sound reason for remaining away.' " (*Taylor*, *supra*, p. 19, fn. 3 [quoting *Cureton v. United States* (D.C. Cir. 1968) 396 F.2d 671, 676].) (Italics added.) California courts apply this standard by examining the entire record under the totality of the circumstances. (*Connolly*, *supra*, at p. 385.)

b. *Absence of a Pro Se Defendant Without the Presence of Counsel*

The above cases concern the presence of defendants represented by counsel. But when both the defendant and counsel are absent, proceeding with trial implicates not only the right to be present, but the full panoply of trial rights. "An absent defendant cannot present witnesses on his behalf or cross-examine prosecution witnesses. An absent defendant cannot object to inadmissible evidence. An absent defendant cannot question potential jury members, present an opening statement, or offer a summation. In short, an absent defendant can protect neither his constitutionally guaranteed trial rights nor his interest in the outcome of the proceeding." (*Davis v. Grant* (2d Cir. 2008) 532 F.3d 132, 143.)

In this case, defendant was present for jury selection, opening argument, and the examination of one witness. But he was absent for the rest of the trial, during which the prosecution presented testimony from five additional witnesses and the court held evidentiary hearings on the admissibility of defendants' statements to police. At the very least, these proceedings implicate defendant's right to confront witnesses against him, his right to present a defense, his right to present argument, and his privilege against self-incrimination, in addition to his right to be present. Neither the United States Supreme Court nor the California Supreme Court has ruled on the constitutionality of holding a trial under these circumstances.

11

Cases from other courts addressing this issue comprise two categories: voluntary absence and involuntary absence.

(1) *Involuntary Removal of a Pro Se Defendant*

In cases of involuntary absence, a trial court removes a pro se defendant for engaging in tactics that disrupt the proceedings in some fashion. In this situation, California courts of appeal have held that it is error to proceed with trial absent the appointment of defense counsel. (*People v. Soukomlane* (2008) 162 Cal.App.4th 214, 235 (*Soukomlane*); *People v. El* (2002) 102 Cal.App.4th 1047, 1050 (*El*); *People v. Carroll* (1983) 140 Cal.App.3d 135, 143 (*Carroll*).) Cases from other jurisdictions are generally in accord with this principle. (*United States v. Mack* (9th Cir. 2004) 362 F.3d 597, 602; *People v. Anderson* (N.Y. App. Div. 1987) 133 A.D.2d 120, 121; *Saunders v. State* (Tex. App. 1985) 721 S.W.2d 359, 363; see also *Davis v. Grant*, *supra*, 532 F.3d at p.144 [dicta opining that the trial court erred by proceeding in defendant's absence, but denying relief under the deferential standard of review required by federal habeas corpus law].)

The facts of *Carroll* are typical for this category of cases. Carroll, charged with first degree murder, moved pretrial to relieve appointed counsel and represent himself. (*Carroll*, *supra*, 140 Cal.App.3d at p. 138.) The trial court reluctantly granted his motion after extensively questioning him and admonishing him on the perils of self-representation. The case proceeded to trial after defendant sought multiple continuances and made several untimely requests for appointment of cocounsel, which the court denied as an attempt to delay trial. The court physically removed Carroll during jury selection for "disrupting the jury," but brought him back into court after the jury was sworn. (*Id.* at p. 139.) The court then warned Carroll that he would be removed during trial if he continued to disrupt the proceedings. When Carroll attempted to use his opening statement to lodge a protest, the court removed him from trial, and the prosecution presented its first witness in his absence. The court then allowed Carroll to return to the

courtroom for cross-examination, but he again protested and the court removed him a third time. The prosecution presented additional witnesses in Carroll's absence, and he was unavailable to cross-examine at least one witness. The court subsequently allowed Carroll to return, and he remained in the courtroom for the remainder of trial despite further disruptive tactics. (*Id.* at pp. 140-141.)

The Court of Appeal held that the trial court erred by proceeding in Carroll's absence. "Such a situation offends the most fundamental idea of due process of law, as defendant is totally deprived of presence at trial and even of knowledge of what has taken place. Because defendant represented himself, his removal from the courtroom deprived him not only of his own presence, but of legal representation." (*Carroll*, *supra*, 140 Cal.App.3d at p. 141.) The court held the error to be structural, not subject to harmless error analysis. (*Id.* at p. 144; accord *United States v. Mack*, *supra*, 362 F.3d at p. 602 [denial of counsel and summation constituted structural error]; cf. *El*, *supra*, 102 Cal.App.4th at p. 1051 [applying harmless error analysis where pro se defendant was absented only during prosecution's opening argument]; cf. *Soukomlane*, *supra*, 162 Cal.App.4th at p. 235 [declining to decide whether error was structural because reversal was required regardless].) However, the court explicitly limited its holding to cases of involuntary removal: "Our holding today does not extend to cases where defendant clearly chooses to represent himself and then clearly, voluntarily, and *on the record*, refuses to participate in his trial." (*Carroll*, *supra*, at p. 144.) (Italics added.)

(2) *Voluntary and Knowing Absence of a Pro Se Defendant*

A defendant may voluntarily and knowingly absent himself from trial on the record. The First District Court of Appeal considered such a case in *People v. Parento* (1991) 235 Cal.App.3d 1378 (*Parento*). After electing to represent himself, Parento first requested a continuance, and then requested appointment of counsel. The trial court denied both requests. Parento then told the court: "Just do it without me then. That's what you do. . . . You just write me a letter when it's over. That's what you do." (*Id.* at

13

p. 1380, fn. 2.) Parento "refused to participate further in the proceedings, and thus was absent from the trial." (*Id.* at p. 1380.) The Court of Appeal held that the trial court did not err by proceeding with trial in Parento's absence. The court distinguished *Carroll* on the ground that Parento's absence constituted a voluntary waiver of his right to be present at trial as well as his right to counsel. (*Id.* at p. 1381.) The court compared the absence of the defendant to a trial in which a pro se defendant is present but declines to participate. (See *People v. Teron* (1979) 23 Cal.3d 103 [pro se defendant has no duty to present a defense], abrogated on other grounds by *People v. Chadd* (1981) 28 Cal.3d 739.)

Courts from other jurisdictions are in accord that when a defendant voluntarily and knowingly waives his trial rights by absenting himself from trial, the trial court may proceed without appointing counsel. (*Clark v. Perez* (2d Cir. 2008) 510 F.3d 382 (*Clark*); *Torres v. United States* (2d Cir. 1998) 140 F.3d 392 (*Torres*); *United States v. Lawrence* (4th Cir. 1998) 161 F.3d 250 (*Lawrence*); *State v. Eddy* (R.I. 2013) 68 A.3d 1089 (*Eddy*); *State v Worthy* (Minn. 1998) 583 N.W.2d 270 (*Worthy*); *People v. Brante* (Colo. Ct. App. 2009) 232 P.3d 204 (*Brante*); cf. *Thomas v. Carroll* (3d Cir. 2009) 581 F.3d 118 (*Thomas*) [dicta opining that the trial court erred by proceeding in defendant's absence, but denying relief under the deferential standard of review on federal habeas corpus].) The proceedings in *Eddy* are instructive. Over a two-year period with multiple continuances, Eddy was appointed three attorneys, each of which he rejected. (*Eddy*, *supra*, at pp. 1092-1096.) At trial, the court refused to appoint a fourth attorney, so Eddy proceeded in pro per. After a failed attempt to negotiate a plea, Eddy requested to leave the courtroom. The court advised Eddy that the trial would continue if he left, and that he would be waiving his rights to be present, to confront witnesses against him, and to present a defense. (*Id.* at p. 1097.) Eddy assured the court he understood, and the court found his waiver to be knowing, voluntary, and intelligent. The

14

trial proceeded to verdict without Eddy, and the Rhode Island Supreme Court affirmed his conviction.

The above cases of voluntary absence all share a common critical fact: The defendants absented themselves on the record with the knowledge that the trial was proceeding without them. (*Parento*, *supra*, 235 Cal.App.3d at p. 1380, fn. 2; *Clark*, *supra*, 510 F.3d at p. 387; *Torres*, *supra*, 140 F.3d at p. 398; *Lawrence*, *supra*, 161 F.3d at p. 252; *Worthy*, *supra*, 583 N.W.2d at p. 274; *Brante*, *supra*, 232 P.3d at p. 206; *Thomas*, *supra*, 581 F.3d at p. 122.) In some cases, the trial court notified the defendant during trial that he or she was free to rejoin the trial, or the court attempted to return the defendant to the courtroom. (*Clark*, *supra*, at p. 387; *Worthy*, *supra*, at pp. 274-275; *Brante*, *supra*, at p. 207; *Thomas*, *supra*, at p. 122). In other cases, the defendant followed the proceedings remotely, or the court appointed advisory counsel to keep the defendant informed of the proceedings. (*Clark*, *supra*, at p. 387; *Torres*, *supra*, at p. 398; *Worthy*, *supra*, at p. 277; *Brante*, *supra*, at p. 207.)

c. *The Trial Court Erred by Proceeding with Trial in Abstentia*

The cases discussed above do not establish a standard of review for a trial court's decision to proceed with trial when a pro se defendant is absent and no defense counsel is appointed. However, " 'An appellate court applies the independent or de novo standard of review to a trial court's exclusion of a criminal defendant from trial, either in whole or in part, insofar as the trial court's decision entails a measurement of the facts against the law.' " (*People v. Perry* (2006) 38 Cal.4th 302, 311-312 [quoting *People v. Waidla* (2000) 22 Cal.4th 690, 741].)

Defendant urges us to follow *Carroll*, *El*, and *Soukolamne*. The Attorney General contends these cases are inapposite because defendant voluntarily absented himself from trial, and we should therefore follow *Parento*. But this case does not fall squarely into either category of cases.

15

The Attorney General is correct that defendant voluntarily failed to appear for trial, thereby absenting himself from the proceedings. The trial court so found, and the record supports this finding. But unlike the defendants in *Parento* and the other voluntary absence cases, defendant here did not absent himself on the record. Furthermore, nothing in the record shows he knew the proceedings would continue without him. To the contrary, the trial court found that defendant may have believed "that if he didn't show up to trial that the court would terminate this jury trial . . . ." Defendant's statement to his probation officer—that he intended to cause a mistrial— supports this finding. And if defendant did not know the trial was proceeding without him, he could not have known he was waiving his fundamental trial rights—including his right to confront the prosecution's witnesses, his right to present a defense, and his right to present argument.

"Because the right to confrontation is constitutionally guaranteed in order to protect the fairness of a trial and the reliability of the truth-determining process, the United States Supreme Court requires a waiver of the right to be 'knowing and intelligent.' " (*People v. Disandro* (2010) 186 Cal.App.4th 593, 600 [quoting *Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 237-238].) "A waiver of certain key constitutional rights, such as the right to confrontation, cannot be presumed from a silent record." (*Ibid.*) A pro se defendant in a non-capital case may waive *all* fundamental trial rights—including the right to be present, the right to assistance of counsel, the right to confront witnesses against him, and the right to present a defense—simply by pleading guilty. But the record must show that such a waiver is voluntary *and knowing*. (*Boykin v. Alabama* (1969) 395 U.S. 238, 242; *In re Tahl* (1969) 1 Cal.3d 122, 131.) The same is true of a pro se defendant who waives these rights by voluntarily choosing to leave his or her trial. (*Clark*, *supra*, 510 F.3d at p. 397; *Torres*, *supra*, 140 F.3d at p. 402.) Here, nothing in the record shows defendant knew the trial would proceed or was proceeding

16

without him.  Hence the record fails to support any inference that defendant made a knowing waiver of his fundamental trial rights.[7]

The Attorney General argues that defendant's behavior should be condemned, not rewarded, because his failure to appear was one of numerous attempts to manipulate the proceedings and frustrate the orderly administration of justice.  We do condemn defendant's conduct, but this cannot be the dispositive factor in our analysis.  In all of the cases involving involuntary removal, the defendant engaged in tactics designed to disrupt the trial proceedings.  (*Soukomlane*, *supra*, 162 Cal.App.4th at p. 234 [defendant disrupted trial with repeated baseless objections]; *El*, *supra*, 102 Cal.App.4th at p. 1049 [defendant interrupted prosecutor's opening statement with repeated baseless objections]; *Carroll*, *supra*, 140 Cal.App.3d at p. 144 [defendant disrupted the proceedings with repeated insistence on appointment of counsel]; *Mack*, *supra*, 362 F.3d at p. 599 [defendant's behavior was obstreperous, contemptuous, and demonstrative of his unwillingness or inability to abide by directions from the court].)  Yet these cases all held that the trial courts erred by proceeding in the defendants' absence.  By contrast, in cases of voluntary absence, courts have affirmed convictions even where the defendant absented himself with no record of disruptive conduct or malicious intent.  (*Parento*, *supra*, 235 Cal.App.3d at p. 1380; *Lawrence*, *supra*, 161 F.3d at p. 252.)  These cases demonstrate that the dispositive factor is not the defendant's intent to disrupt the proceedings, but whether the defendant's waiver was knowing and voluntary.

Here, the trial court found defendant forfeited his $50,000 bail, and the court denied his motion to exonerate it.  Subsequently, as a result of his misconduct, defendant was charged with felony failure to appear while released on bail.  (Pen. Code, § 1320.5.)

---

[7] The trial court found that defendant voluntarily and knowingly absented himself, but the court made no finding that defendant knew the proceedings would continue without him or that he knowingly waived his trial rights, e.g., his confrontation rights.

17

He was convicted and sentenced to 90 days in county jail.[8]  Thus, defendant was not rewarded; he has been appropriately punished for his failure to appear at trial.

The Attorney General argues that a ruling for defendant would put trial courts in a quandary because appointing counsel against defendant's will would have violated *Faretta*.  The Attorney General contends that if the court were not allowed to proceed without defendant, the only other legal option would be to declare a mistrial.  We disagree.

While we sympathize with the trial court, and we recognize the difficulties of trying obstreperous defendants, the benefit of hindsight shows the court had options apart from mistrial.  First, after granting the *Faretta* motion, the court could have appointed Camperi as standby counsel solely to observe the proceedings; the court then could have appointed Camperi to represent defendant when he failed to appear.  Doing so would not have violated *Faretta*:  "*Faretta* recognized the right of the court to terminate a defendant's right to represent himself when he abuses the privilege and engages in serious and obstructionist misconduct."  (*People v. Brownlee* (1977) 74 Cal.App.3d 921, 932 (*Brownlee*).)  As the court recognized in *Brownlee*, there are few tactics less obstructive than leaving the courtroom altogether.  "[N]o court of justice, worthy of the name, can allow its legitimate function to be stopped by such a maneuver."  (*Ibid.*)  Thus, the court in *Brownlee* held that a trial court may appoint counsel to represent an absent pro se defendant against his will when the defendant absents himself for the purpose of disrupting the proceedings.

Indeed, under *Brownlee*, the trial court had a second option.  *Brownlee* suggests that the trial court could have appointed Camperi to take over midtrial even if Camperi had not been appointed as standby counsel at the start of trial.  In *Brownlee*, the trial court

---

[8] We take judicial notice of the record in defendant's failure to appear case. (Evid.Code, §§ 452, subd. (d), 459, subd. (a).)  At the time of sentencing in that case, defendant had already served 299 actual days of the sentence imposed in this case.

18

granted Brownlee's *Faretta* motion on the third day of trial and dismissed the public defender. (*Brownlee*, *supra*, 74 Cal.App.3d at p. 924.) On the fourth day of trial, Brownlee walked out of the courtroom and refused to participate further. The trial court reappointed the public defender, and trial continued. The Court of Appeal affirmed the conviction on the ground that the public defender was " 'thoroughly familiar with the case' " and competent to proceed. (*Id.* at p. 933.) It appears from the record in this case that Camperi was equally well prepared to step in. Furthermore, by signing the *Faretta* warnings form, defendant acknowledged that the court could terminate his right to self-representation in the event he engaged in misconduct. He further acknowledged that "if at some point an appointed attorney does have to take over my case, that attorney may be at a great disadvantage in presenting my case."

As a third possible option, the trial court could have warned defendant during the *Faretta* warnings process that the trial would continue without him if he voluntarily absented himself, and that his doing so would result in a waiver of his trial rights.

We decline to hold that a trial court is constitutionally required to proceed in accordance with any of these options; these decisions are best left to the discretion of trial courts based on the individual factors of each case. We hold only that the record shows the defendant here did not make a knowing, voluntary waiver of his fundamental trial rights; the trial court therefore erred by proceeding with trial in defendant's absence and without appointing counsel. Furthermore, because the error resulted in a complete deprivation of defendant's fundamental trial rights, thereby "affecting the framework within which the trial proceeds," the trial in abstentia constituted structural error not subject to harmless error review. (*Arizona v. Fulminante* (1991) 499 U.S. 279, 310; *Carroll*, *supra*, 140 Cal.App.3d at p. 141; *United States v. Mack*, *supra*, 362 F.3d at p. 602.) Accordingly, we will reverse the judgment.

B. *Denial of Defendant's Motion for a Continuance*

As set forth above in Section A.1., the trial court—while granting defendant's *Faretta* motion—also denied his motion for a one-day continuance. Defendant contends the trial court abused its discretion in doing so, and that the error requires reversal per se. The Attorney General argues that the trial court properly denied defendant's motion on the ground that it was merely a delay tactic. We conclude the trial court erred and reversal of the judgment is also required on this ground.

1. *Legal Principles*

A continuance in a criminal case may be granted only for good cause. (Pen. Code, § 1050, subd. (e).) "The determination of whether a continuance should be granted rests within the sound discretion of the trial court, although that discretion may not be exercised so as to deprive the defendant or his attorney of a reasonable opportunity to prepare." (*People v. Sakarias* (2000) 22 Cal.4th 596, 646.) The court must consider " ' "not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion." ' " (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037 (*Jenkins*).)

"These principles are equally applicable to a defendant who competently elects to serve as his own attorney." (*People v. Maddox* (1967) 67 Cal.2d 647, 653 (*Maddox*).) A pro se defendant "must be given, if he requires it, as much time to prepare for trial as an attorney; and if a reasonable continuance is necessary for this purpose, it must be granted upon timely request. To deny him that opportunity would be to render his right to appear in propria persona an empty formality, and in effect deny him the right to counsel." (*Ibid.*)

2. *The Trial Court's Denial Was an Abuse of Discretion*

Defendant relies on *Maddox*, *supra*, 67 Cal.2d 647. In *Maddox*, on facts similar to those here, the Supreme Court reversed a judgment of conviction based upon the denial

20

of a motion for continuance by a pro se defendant. Maddox had made several timely pre-trial motions to represent himself, including a petition for a writ of mandate. (*Id.* at p. 678.) All of his pre-trial motions were denied, and the case went to trial. On the morning of trial, his counsel renewed Maddox's motion to proceed in pro per. In a colloquy on the matter, Maddox informed the court he was not ready to proceed and requested a continuance for the purpose of subpoenaing witnesses. The court granted his motion to proceed in pro per, but denied his request for a continuance on the ground that Maddox had previously been given adequate opportunities to prepare for trial. The trial proceeded, and Maddox was convicted. The Supreme Court held that the trial court's denial of the motion for a continuance, following its "sudden about-face" on the motion to proceed in pro per, constituted reversible error in violation of due process. (*Id.* at pp. 651-653.)

Here, the trial court's rulings on defendant's motions followed a similar pattern. Defendant first moved to represent himself on April 17, 2012, six days before trial. The trial court denied the motion on the ground that defendant was not prepared to proceed to trial. The next day, defendant moved again to represent himself and requested a continuance of two weeks. The court again denied the *Faretta* motion on the ground that defendant was unprepared. On April 23, 2012, on the morning of trial, but before the start of jury selection, defendant moved once more to represent himself, and the court once more denied the motion on the ground that defendant was unprepared. The court then began jury selection, which continued for the rest of the day. The next morning, in the middle of jury selection, defendant moved again to represent himself. This time, the trial court—in a "sudden about-face"—granted defendant's *Faretta* motion. (*Maddox*, *supra*, 67 Cal.2d at p. 651.) But the court also denied defendant's motion for a one-day continuance. At that point, having granted defendant's *Faretta* motion, the trial court erred by refusing to grant defendant's request for a one-day continuance to prepare for trial. (*Ibid.* at pp. 651-652.)

21

We acknowledge that the trial court based its initial rulings partly on the finding that defendant was engaged in delay tactics and "trying to game the system." As the Supreme Court made clear in *Maddox*: "We do not condone the device of claiming the right to appear in propria persona for the purpose merely of delaying the trial . . . ." (*Maddox*, *supra*, 67 Cal.2d at p. 655.) But that cannot justify the court's denial of a one-day continuance while simultaneously *granting* the *Faretta* motion. If defendant's *Faretta* motion was merely a delay tactic, the trial court properly could have denied it. (*People v. Marshall* (1997) 15 Cal.4th 1, 23 [a motion for self-representation made to delay or frustrate the orderly administration of justice may be denied].) Or the court could have denied the motion as untimely under *People v. Windham* (1977) 19 Cal.3d 121. But once the court granted defendant's *Faretta* motion, it was obligated to grant a reasonable continuance. "While it is now settled that a trial court may *deny* a request for self-representation made on the very eve of trial, on the ground that granting the motion would involve a continuance for preparation, the very rationale of that doctrine requires that, if the trial court, in its discretion, determines to *grant* the request for self-representation it must then grant a reasonable continuance for preparation by the defendant." (*People v. Fulton* (1979) 92 Cal.App.3d 972, 976, original italics; see also *People v. Bigelow* (1984) 37 Cal.3d 731, 741 fn. 3 ["[I]f the trial court did not intend to deny the motion for self-representation as untimely . . . [citation], it should have considered granting a continuance"].)

The Attorney General relies on *Jenkins*, *supra*, 22 Cal.4th 900, and *People v. Clark* (1992) 3 Cal.4th 41 (*Clark*), for the proposition that the court may condition the granting of an untimely *Faretta* motion on there being no continuance. But those cases concern *Faretta* motions granted well after the start of trial. In *Jenkins*, a death penalty case, the defendant moved to represent himself in the middle of the penalty phase. (*Jenkins*, *supra*, 22 Cal.4th at p. 1033.) In *Clark*, another death penalty case, the trial court denied the defendant's *Faretta* motion on the eve of trial, but then granted the

22

renewed motion on the fourth day of trial. (*Clark*, *supra*, 3 Cal.4th at p. 93.) By contrast, defendant here first moved to represent himself six days before trial, and he renewed his motion several times pretrial. The trial court finally granted his motion in the middle of jury selection, but before the jury was sworn. Under these circumstances, we conclude a request for a one-day continuance was reasonable and should have been granted.

For these reasons, we hold the trial court abused its discretion by denying defendant's motion for a one-day continuance while granting his *Faretta* motion, and this error requires reversal. (*Maddox*, *supra*, 67 Cal.2d at p 653; *People v. Wilkins* (1990) 225 Cal.App.3d 299, 308.)

C. *Denial of the Pitchess Motion*[9]

Defendant argues the trial court erred by failing to conduct an in camera review of police records in response to his *Pitchess* motion for discovery. We conclude the trial court did not abuse its discretion in denying defendant's motion without prejudice.

1. *Background*

In June 2010, defendant moved under *Pitchess* for pretrial discovery as to seven police officers. As to all seven officers, the motion sought six categories of discovery, including the names and contact information of any persons filing complaints against them, any information regarding civil litigation against them, any disciplinary actions taken against them, any *Brady* material found in their personnel files, and "All complaints from any and all sources relating to violation of constitutional rights, fabrication of charges, fabrication of evidence, fabrication of reasonable suspicion and/or probable cause, illegal search/seizure; false arrest, perjury, dishonesty, writing of false police reports, writing of false police reports to cover up the use of excessive force, planting of evidence, false or misleading internal reports, including or not limited to false overtime or medical reports, or disability reports, unprofessional conduct, discourtesy,

---

[9] We consider this claim in case the prosecution seeks retrial.

23

misuse of police authority and any other evidence of misconduct amounting to moral turpitude within the meaning of *People v. Wheeler* . . . ."

In support of the motion, defense counsel attached a declaration alleging that the seven officers "made material misstatements with respect to their observations of [defendant's] alleged acts and statements" on the date of the offense. The motion attached police reports authored by four of the officers. Counsel's declaration alleged that these reports falsely reported several statements by defendant "to justify officer decisions at the scene, justify a warrantless search of [defendant's] home, and to aid in his prosecution." The declaration also quoted several allegedly false statements made in the police reports in which defendant consented to the search of his home, disclosed the location of his firearms, and made various statements about his relationship with Gonzalez.

The declaration did not identify which officers made the allegedly false statements or specify how the statements were false. Rather, the declaration stated: "Because [defendant] cannot affirmatively, nor precisely, describe the non-recorded words he spoke to officers, he generally denies the statements as alleged in the police report. He also generally denies the actions described by the officers in the police report." The declaration further asserted that "at least one officer has not disclosed a potential bias caused by prior knowledge and/or interaction(s) with [defendant]." The declaration did not identify which officer was allegedly biased or specify the nature of the claimed bias.

The trial court found that defendant "set out a whole series of quotes, but there was no effort to tie anything into a possible factual scenario." Accordingly, the trial court found that defendant failed to set forth a plausible factual foundation and that defendant made no showing of materiality sufficient to warrant discovery. The court denied the motion without prejudice to allow the defendant to "tighten up the declaration and file a new motion." Defendant filed no subsequent *Pitchess* motions.

2.  *Legal Principles*

Under Evidence Code section 1043, "A criminal defendant, on a showing of good cause, is entitled to discovery of information in the confidential personnel records of a peace officer when that information is relevant to defend against a criminal charge." (*People v. Gaines* (2009) 46 Cal.4th 172, 176 (*Gaines*).)  "The relatively relaxed standards for a showing of good cause under section 1043, subdivision (b)—'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought —insure the production for inspection of all potentially relevant documents." (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 84.)  Under this " 'relatively low threshold,' " "a defendant need demonstrate only 'a logical link between the defense proposed and the pending charge' and describe with some specificity 'how the discovery being sought would support such a defense or how it would impeach the officer's version of events.' " (*Gaines*, *supra*, at p. 182 [quoting *Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1021 (*Warrick*)].) "[T]he information sought must be described with some specificity to ensure that the defendant's request is not so broad as to garner ' "all information which has been obtained by the People in their investigation of the crime" ' but is limited to instances of officer misconduct related to the misconduct asserted by the defendant." (*Warrick*, *supra*, at p. 1021.)  "This specificity requirement excludes requests for officer information that are irrelevant to the pending charges." (*Ibid.*)

We review a trial court's denial of a *Pitchess* motion for abuse of discretion. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039.)

3.  *The Denial of Defendant's Pitchess Motion Was Not an Abuse of Discretion*

Defendant's motion requested several broad categories of materials without specifically tying each of the requests to a specific factual scenario.  For example, the motion requested materials relating to the use of excessive force, planting evidence, falsification of overtime or medical records, and so forth.  Nothing in counsel's

25

declaration attempted to set forth facts or claims establishing a logical, material link between these requests and the subject matter of the litigation. As to these requests, the motion was both overbroad and insufficiently specific. "[O]nly documentation of past officer misconduct which is *similar* to the misconduct alleged by defendant in the pending litigation is relevant and therefore subject to discovery." (*California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1021.) Accordingly, a trial court "will properly deny such an overbroad discovery request." (*Ibid.*)

While defendant made certain factual allegations specific to the circumstances of his arrest—e.g., that police falsified his statements concerning his possession of the firearms—he failed to specify which of the seven officers actually put forth the statements at issue. This lack of specificity failed to satisfy the requirement that "a showing of good cause must be based on a discovery request which is tailored to the specific officer misconduct that is alleged." (*California Highway Patrol v. Superior Court*, *supra*, 84 Cal.App.4th at p. 1021.)

Defendant contends that, even if his motion was overbroad, the trial court should have narrowed it. Defendant relies on *People v. Jackson* (1996) 13 Cal.4th 1164 (*Jackson*) for this principle. But that case merely confirms that trial courts have the discretion to narrow an overbroad *Pitchess* motion; the court in *Jackson* did not impose a duty to construe a defendant's overbroad claims more narrowly. (*Id.* at p. 1220.) Given that the trial court in this case denied defendant's motion without prejudice, thereby allowing defendant to "tighten up the declaration" and renew the motion, the court was not required to narrow defendant's motion for him.

Accordingly, we conclude that the trial court did not abuse its discretion in denying defendant's *Pitchess* motion without prejudice, and we find this claim without merit.

### III. DISPOSITION

The judgment is reversed.

_____
Márquez, J.

WE CONCUR:

_____
Rushing, P. J.

_____
Premo, J.

Trial Court:                          Santa Clara County
                                      Superior Court No.:  CC954850

Trial Judge:                          The Honorable Paul R. Bernal


Attorney for Defendant and Appellant  E. Michael Linscheild
Zeferino Espinoza, Jr.:               under appointment by the Court of
Appeal for Appellant




Attorneys for Plaintiff and Respondent  Kamala D. Harris,
The People:                             Attorney General

                                        Dane R. Gillette,
                                        Chief Assistant Attorney General

                                        Gerald A. Engler,
                                        Senior Assistant Attorney General

                                        Eric D. Share,
                                        Supervising Deputy Attorney General

                                        Luke Fadem,
                                        Deputy Attorney General

                                        Bruce Ortega,
                                        Deputy Attorney General

People v. Espinoza
H039219